KIBLER v. SOUTHERN RY.

1. PASSENGERS.—RAILROAD FARE in this State, under the act of 1900, for ordinary passengers is three cents per mile for short and long distances.    MR. CHIEF JUSTICE MCIVER *dissents.*
2. PUNITIVE DAMAGES.—It is error to instruct jury that "the intentional doing of an unlawful act would be construed malicious," and entitle plaintiff to punitive damages.
3. EVIDENCE.—A LETTER of the railroad commissioners giving their opinion of the construction of acts in regard to passenger fare on railroads, written after action brought, and upon which no ruling has been made by commission, is incompetent as evidence.
4. REHEARING refused.

Before IZLAR, Special Judge, Newberry, May, 1900.    Reversed.

Action by William Kibler against Southern Railway Co. on the following complaint:

"The plaintiff, complaining, alleges:

"I. That the defendant is a corporation by and under the laws of the State of South Carolina, and as such is doing business therein as a common carrier of passengers.

"II. That on the sixth day of May, 1900, the plaintiff boarded a passenger train of the defendant, known in railroad terms as train No. 11, with the purpose and intent of becoming a passenger thereon, having the money with which to pay his fare thereon, and did become such said passenger thereon, from the station on defendant's road at Newberry, county and State aforesaid, to another station upon said road of defendant, at Helena, same county and State aforesaid.

"III. That the said plaintiff, as passenger aforesaid, did offer and tender to the said defendant the fare in money for his passage and transportation from the said station of Newberry to the said station of Helena.

"IV. That the said defendant not only refused and declined to accept the lawful fare so offered and tendered by the plaintiff, but demanded of plaintiff an unlawful and excessive fare before it would transport him to his destination.

"V. That the defendant did wilfully, wrongfully, unlawfully and intentionally eject the said plaintiff from the said train, and did wilfully, wrongfully, unlawfully and intentionally refuse him passage and transportation upon the said train between the said stations of Newberry and Helena, as aforesaid (after having declined and refused, as aforesaid, to accept the lawful fare tendered by plaintiff) because he did not pay the very excessive and unlawful fare demanded by defendant.

"VI. That on account of the wilful, wrongful, unlawful and intentional action of the said defendant in declining and refusing to accept and receive the fare offered and tendered to it by the plaintiff, and in unlawfully, wilfully, wrongfully and intentionally demanding and charging a greatly excessive and unlawful fare, and also in wilfully, wrongfully, unlawfully and intentionally refusing and declining to allow

plaintiff transportation and passage over its road as afore-
said, between the said stations, and in wilfully, wrongfully,
unlawfully and intentionally ejecting the plaintiff from the
said train, the said plaintiff was and is now sorely humiliated,
offensively insulted and deeply wounded in his feelings, and
was delayed and greatly inconvenienced and his purpose dis-
arranged by the said wilful, wrongful, unlawful and inten-
tional conduct on the part of the defendant in the manner
aforesaid; by reason of all, each one, some one, of said wilful,
unlawful, wrongful and intentional acts and conduct by and
on the part of the said defendant, the plaintiff has been and is
damaged to his great hurt and injury, and still otherwise, in
the sum of $1,999.

"Wherefore, the plaintiff prays judgment against the de-
fendant for the sum of $1,999, and for the costs and dis-
bursements of this action."

The answer of the defendant is:

"I. The defendant denies the statements contained in par-
agraphs I., III., IV., VI. of the complaint.

"II. The defendant admits that on May 6th, 1900, the
plaintiff boarded a passenger train of the defendant known
in railroad terms as train No. 11, with the purpose and intent
of becoming a passenger thereon from Newberry to Helena.
It has not knowledge or information sufficient to form a be-
lief as to the allegation that the plaintiff had the money with
which to pay his fare, and it denies the allegation that the
plaintiff became a passenger upon said train, for the reason
that he refused to pay the lawful charges for transportation.

"III. Further answering the complaint, the defendant al-
leges: (1) That it is a corporation organized under the
laws of the State of Virginia, and is engaged in the business
of common carrier of passengers in the State of South Caro-
lina. (2) That on May 6th, 1900, the plaintiff boarded the
defendant's train at Newberry for the purpose of going to
Helena, the next station north; that he neglected and failed
to purchase a ticket for his passage, although the opportunity

had been afforded him by the defendant to provide the same. (3) That when the plaintiff was approached by the conductor for his fare, the plaintiff was unprovided with a ticket and tendered the said conductor ten cents for his fare. The said conductor, as he was authorized by law and by the regulations of the company to do, demanded of the plaintiff twenty-five cents excess of the said fare, offering him a draw-back ticket for the said twenty-five cents excess, which was redeemable in cash on presentation at any ticket office of the company within twenty days after date. The plaintiff refused to pay said excess and expressed his desire to leave the train, which was stopped about midway between Newberry and Helena, and plaintiff alighted therefrom.

"Wherefore, the defendant demands judgment against the plaintiff that the complaint be dismissed with costs."

The following is so much of the charge as relates to the questions at issue:

"Now, it is a question of fact for you to determine, whether the plaintiff became a passenger of defendant's passenger train at Newberry to be transported to Helena, on the 6th of May, 1900, in the light of the law as I have given it to you on this question. That is one of the questions which you are to decide from the testimony which you have heard, whether he became a passenger on that occasion under the circumstances testified to. If he did, if you come to the conclusion that he did, from the testimony, why, then, he would be entitled to the rights of a passenger on that rain. Now, if you determine that the plaintiff did become such passenger, then you will proceed to inquire whether or not he was unlawfully ejected from the defendant's train. If the plaintiff did not become such passenger on the defendant's train on the occasion alleged, this, it seems to me, would put an end to all further investigation, so far as being a passenger was concerned. But if you should arrive at the conclusion that the plaintiff became a passenger, your next inquiry will be, as I have said, was he unlawfully ejected? To determine this

question, you must be governed by the following rules of law. I charge you that railroad companies have the right to adopt reasonable rules as to the method of paying fares by passengers who use their passenger trains for the purpose of being transported from one place to another, and to discriminate between fares paid on board their trains and at stations, and to remove from their cars in a proper manner and at a proper place, persons who refuse to comply with such regulations; and that that regulation requiring passengers who do not procure tickets at stations where tickets are sold before boarding their trains and commencing their journey to pay an extra amount of fare, and providing that if the coupons shall be given to the passenger on which he may collect the extra fare from any agent at a station, and exempting from its operation such passengers as board their trains at stations where tickets are not sold, that such would be, in my opinion, a reasonable regulation; and I, therefore, charge you that I hold it would be a reasonable and a valid regulation. You have heard the testimony as to the length of time this regulation has been in force, and as to the manner of its publication. You must determine from this testimony whether there was such a regulation, or not, how long it had been in operation, if it had been in operation at all, and whether its posting, if it was posted, was such as to advise the traveling public of its existence. I will not trench upon your prerogative at all, because these are questions of fact which you are to determine, and apply the law to those facts as I have given it to you. I leave all questions of fact for you, and you must decide them for yourselves.

"There is no question that railroad companies may make such regulations as I have charged you, provided passengers are given a convenient place and sufficient opportunity to procure tickets previous to boarding the train to become passengers, and such regulations would not be unreasonable nor oppressive nor open to the objection that the excess so imposed is a part of the fare and makes the fare charged higher

than the rate allowed by law, which in this State by statutory provision is three cents per mile.

"Now, you have heard the testimony as to the station here at Newberry, and you must say from the testimony whether or not the defendant, on the 6th day of May, 1900, had provided or built convenient place for those intending to become passengers on their passenger trains to procure tickets for their journey, and there was sufficient opportunity afforded the plaintiff, on the occasion referred to, to procure his ticket before boarding defendant's passenger train for Helena. These are questions for you. Such regulation is conducive, says the law, to the rapid, orderly and convenient dispatch of the conductor's part in the collection of fares, and thus leaving him free for the performance of his other duties in connection with stops at stations, the entrance and exit of passengers, and the whole supervison of the safety and comfort of those under his care. There may be circumstances, Mr. Foreman and gentlemen, as was contended in the argument by one of the distinguished counsel who addressed you, which would render the enforcement of such regulation unreasonable—as where the passenger boarded the train at a station where no tickets were sold, where the office provided by the railroad company for the sale of tickets was closed, or where the agent had lost the key, as in one of the illustrations that counsel referred to, and in consequence could not furnish the passenger a ticket; but, ordinarily, I would say, such regulations are not only reasonable, but valid. Now, you are to say from the testimony whether or not any reasons for the non-enforcement of the regulation in this case existed, or if there is any other valid reason proved which would exempt the plaintiff from the enforcement of the regulation against him on the occasion of which he complains. I say you are to take that into consideration, and you are to find the testimony applicable to it, and determine that question. If there was, that enforcement of the rule against him would have been a wrong and his ejection under the circumstances would have been unlawful. Now, if the plaintiff

17—62

boarded the passenger train of the defendant at Newberry, and that is a question for you, without a ticket, having had opportunity to procure a ticket, and when called upon to pay his fare, refused to pay the fare, he became a trespasser on the defendant's train *ab initio*—that is, from the beginning—and the conductor had the right to put him off; for the conductor may put off a passenger who refuses to pay the fare for transportation at any point on the defendant's road in a proper place and in a proper manner—that is, at any place where the passenger would not be injured or in danger, and to use just so much force as was necessary for the purpose of doing it, but no more. So, if the conductor on this occasion, if the plaintiff boarded the passenger car of the defendant at Newberry, having had an opportunity to procure a ticket, and did not do so, and when his fare and the excess required of passengers who get on passenger cars of the defendant at stations where tickets were sold was demanded by the conductor, the plaintiff refused to pay it, the conductor had the right, under the regulations of the company, if you are satisfied from the testimony that such regulations existed and that such were the circumstances as I have stated—these are facts which you must determine—to put the plaintiff off, and to use so much force as was necessary for the purpose of doing it. The facts, as I say, must be found by you from the testimony, must not be what you think about it, or what you have heard about it, but you are to take the testimony as the witnesses have given it to you, and you must determine it on that. You must in determining all facts be governed by the preponderance of the evidence, as I have told you.

"It is contended by the attorneys for the plaintiff that the act of 1884, allowing the railroad companies to make excess charges under certain circumstances, was repealed by the act of 1900, that it was not incorporated in the Revised Statutes, but was omitted. Now, as I understand it, and if I am wrong in that I would like to be corrected right now by the learned counsel engaged in this case, the Revised Statutes

was never passed as an act, and while it is a valuable compendium of the law, got up by a very old Judge—Judge Maher—it did not repeal, or purport to repeal, any statute existing upon the statute books. He made a great many recommendations, but it never was adopted, as I understand it. The statute law remained the same as it did before, and was to be found in the statutes at large. The act of 1900, in my opinion, did not repeal the act of 1884. It purported to amend the act known as the separate coach act. It did fix the rate of fare at three cents a mile, and it did repeal all acts and parts of acts inconsistent with the provisions of the said act—that is, the separate coach act—but it did not purport to deal with the excess rates, where passengers failed to procure tickets at stations where tickets were sold. It did not purport to deal with that question, and there is nothing inconsistent, as I conceive, in the act of 1900 and the act of 1884, even if they both were on the statute book to-day, as I think they are. They would be so construed together as not to interfere with each other at all. The right of railroad companies to charge excess fare, under regulation of the railroad company, was not interfered with. The right of the railroad companies to charge excess, under certain circumstances, as I understand the law, was not conferred by the act of 1884. Railroad companies had this right before the act. The act of 1884 was only intended to limit the right which already existed. I, therefore, hold that, under certain circumstances, the railroad companies have the right by regulation to prescribe excess charges, where persons board their trains at stations where they have provided a convenient place to procure tickets and have them on sale, and that if the passenger fails to comply with the regulation and boards the train without a ticket, and refuses to pay his lawful fare and the excess, he may be ejected from such passenger coach by the conductor at any proper point and in any proper manner.

"Now, the lawful fare is three cents a mile. Did the plaintiff fail to pay the lawful fare and the excess, under a

regulation of the company? These are questions for you to determine from the testimony. If he did, then the conductor had a right to eject him; if he did not, then the company had no such right; and if the defendant did eject the plaintiff under such circumstances, it committed a wrong, and if injury resulted to the plaintiff therefrom, he would be entitled to recover such damages as he sustained thereby. If, under the facts found by you under the law as I have charged you, you conclude that the plaintiff is entitled to recover, the next question is the damages. The question of damages must, like other questions, be determined from the testimony of the case and the circumstances surrounding the case. You are to determine how much damages—I give you the law as to the damages. If you conclude that the plaintiff is entitled to recover, he should have such damages as would compensate him for the injury received, and if the act was done wilfully, wantonly, recklessly or maliciously, he would be entitled, in addition, to compensatory damages, such sum by way of exemplary or punitive damages as you may fix as a punishment to the railroad company for its wilful, wanton, reckless and malicious act.

"Now, as you heard yesterday from one of our law books, any malice does not necessarily import ill-will or prejudice or anything of that kind. The intentional doing of any unlawful act would be construed malicious. Now, gentlemen, that is the law as I understand it in this case. Is there anything further, gentlemen (to counsel?)

"Mr. Cothran: Nothing further.

"Mr. Johnstone: There is one matter that we would ask your Honor to draw especially to the attention of the jury, and it is this: The testimony on both sides is to the effect that the conductor demanded 35 cents. Now, that is the undisputed testimony on both sides. Now, if they had a right to charge ten cents a mile, and your Honor should hold the law to be in a certain direction, that would be all right; but if your Honor holds that it is only three cents a mile, then 25 cents more would make 28 cents, and if he demanded 35

when he was only entitled to demand 28, there would be no right under those circumstances to expel or compel Mr. Kibler to leave.   Of course, I am putting the facts so that your Honor may gather the principle that I desire.   The second is that there is an absolute conflict of testimony between Mr. Hughes on one side and Mr. Kibler on the other as to his demanding an excess fare and furnishing a refunding ticket. Mr. Hughes says that he did.

"Mr. Cothran: That is a question of fact.

"By the Court: That is a question of fact that I could not decide.

"Mr. Cothran: Your Honor could not charge that there was a conflict.

"By the Court: I said if there was any conflict, they must reconcile it, and I have charged them that three cents a mile is the lawful fare under that act.

"Mr. Johnstone: What we want to ask your Honor is, to charge the jury that if the conductor did not offer a refunding ticket under this regulation, that he had no right to expel him.   That is the principle of law that I ask.

"By the Court: Gentlemen, I prefer to leave it just as I have charged it, leave all the facts to you.   You can take the circumstances and ascertain what was done on that occasion. I think I have given you the law as near correctly as I understand it."

From judgment for plaintiff, defendant appeals on following exceptions:

"I. His Honor erred in charging the jury as follows: 'Now, the lawful fare is three cents per mile.   Did the plaintiff fail to pay the lawful fare and the excess, under a regulation of the company?   These are questions for you to determine from the testimony.   If he did, then the conductor had a right to eject him; if he did not, then the company had no such right; and if the defendant did eject the plaintiff under such circumstances, it committed a wrong, and if injury resulted to the plaintiff therefrom, he would be entitled

to recover such damages as he sustained thereby.' The error consisting in this: The complaint alleged that the amount tendered by plaintiff was the lawful fare; his testimony was to the effect that he had tendered ten cents—this was an admission that the ten cents tendered was lawful fare. The issue raised by the pleadings was the legality of the excess charge of twenty-five cents, not the charge of ten cents for one mile instead of three cents. It was error, therefore, to allow the plaintiff, under his complaint, to recover upon the ground that the charge of ten cents was unlawful.

"II. The complaint is based upon the alleged unlawful charge of the excess (twenty-five cents), and it was error to permit a recovery upon the ground that the charge for one mile (Newberry to Helena) exceeded the lawful rate of three cents per mile.

"III. His Honor erred in charging the jury as follows: 'Malice does not necessarily import ill-will or prejudice, or anything of that kind. The intentional doing of any unlawful act would be construed malicious.' The error consisting in this: The charge authorized the jury to find punitive damages, in case the defendant was acting under an honest though mistaken view of its legal rights in the premises; the rule being, 'An act should not be deemed malicious and so warranting punitive damages merely because it is unlawful.'

"IV. His Honor erred in charging that the defendant was limited to three cents per mile in all cases; whereas, he should have held that the defendant, under the law, had the right to charge a minimum rate of ten cents between regular stations, when the fare at three cents per mile would be less than that amount.

"V. His Honor erred in admitting in evidence over the defendant's objection, the letter, 'Exhibit 6,' purporting to have been signed by W. D. Evans, chairman, upon the ground that the same was not properly proved, that it was incompetent, irrelevant and not a certified copy of any action taken by the board of railroad commissioners."

*Mr. T. P. Cothran,* for appellant, cites: *As to punitive damages:* 35 S. C., 304; 34 S. C., 324; 165 U. S., 86; 147 U. S., 107; 26 S. E. R., 917; 20 S. E. R., 720; 35 S. C., 489; 21 How., 207; 12 Ency., 2 ed., 24, 25, 29 S. C., 265; 16 L. R. A., 347.

*Messrs. Johnstone & Welch,* contra, cite: *As to passenger fare:* 23 Stat., 458; 57 S. C., 151; 52 S. C., 567. *On question of damages:* 54 S. C., 505; *Ward* v. *R. R.,* 59 S. C. *Letter of railroad commissioners properly admitted:* Rev. Stat., 1656, 1657.

January 13, 1902. The first opinion was delivered by

MR. CHIEF JUSTICE McIVER. The plaintiff brought this action to recover damages for an alleged unlawful ejection from one of defendant's passenger trains. The particular nature of the case will best be disclosed by the pleadings, and for this purpose a copy of the complaint and answer as set out in the "Case" should be included by the Reporter in his report of the case. It appears from the testimony to be an undisputed fact that the plaintiff, on the 6th day of May, 1900, boarded the train at Newberry for the purpose of going to Helena, the next station above Newberry, and about a mile distant, without a ticket, intending to pay his fare to the conductor on the train. As to what occurred between the plaintiff and the conductor, O. E. Hughes, after the train started, when the conductor went through the coach calling for tickets, there is a direct conflict in the testimony of these two gentlemen. According to plaintiff's version, it was as follows: "On May 6th, 1900, I got on a Southern Railway passenger train at Newberry, intending to become a passenger from Newberry to Helena, the next station, one mile distant. Passengers get on and off there. I had no ticket, but offered to pay my passage. I pulled the money out of my pocket as the conductor came in the coach, in the door. I don't know exactly how much I pulled out, but more than enough to pay my fare, more than ten cents; the conductor

did not receive my fare. I asked him the fare, and he said thirty-five cents to the next station. I told him I would not pay it—I was willing to pay the fare, the regular fare. Q. How much was that? I had paid ten cents a short while before to go up there, to make the same trip; he demanded thirty-five cents. I did not offer to get off the train. He told me I would have to get off if I didn't pay the thirty-five cents. I did not willingly leave; I told him I wouldn't leave, and he said I would have to get off if I didn't pay the thirty-five cents. He stopped the train, pulled the bell about half way between Newberry and Helena, just above Kline's shops, told me to come to the door until the train stopped. I told him I would not move until the train stopped, and if he ordered me to get off then, I would have to get off. He said he would stop, and after the train stopped, ordered me to get off again. I got off * * * He didn't mention the 'excess'—I would have been perfectly willing to pay it, if he had mentioned it. He did not offer any return check, did not mention it." In his cross-examination, the plaintiff said: "I did not know that the fare paid on train was higher than when a ticket was bought. I did not know there was a placard posted in the ticket office, calling attention to that fact. I had never heard of this excess until after this happened. I don't think I ever noticed the placard in the passenger coach * * * Q. Why didn't you buy a ticket? A. Well, before that, as I said, I had rode up there without buying a ticket—it was just carelessness, I suppose. I had paid ten cents to Capt. Billy Smith. Never paid to Capt. Hughes * * * The day was a fair one in May. I was put off about half way between Newberry and Helena, and walked to Helena. The road was very good. Conductor spoke roughly to me when he demanded the thirty-five cents; I don't remember the words, he told me I would have to get off. He didn't put his hands on me." On the other hand, the conductor's version of the matter was as follows: "When we left Newberry and I went through the colored car and took up all the tickets that I could find in there, and got about

half way to the white coach, I found this gentleman (the plaintiff), standing up in the aisle of the train, and he said he was going to Helena, and pulled some change out in his hand—I don't know the amount. I told him the fare would be thirty-five cents, and I would give him a rebate check that he could have cashed at any agency in the State, any of the · Southern Railway agencies, and he said he wouldn't pay it. I told him that was the rule of the company, and I would give him a rebate check and he would have no trouble about that. He said, 'I won't pay it, I will get off.' I stopped the train and he walked down and got out of his own accord. He proposed my stopping the train before I said anything about putting him off or ejecting him. If he had declined to get off, I would have put him off in as gentle a way as I could. I have the instruction from the railroad company with reference to that matter." This witness also testified to the fact that notices were posted in the ticket offices and in the passenger coaches, calling attention to the fact that passengers without tickets would be charged a higher rate than the ticket rate, and he also testified that the ticket office at Newberry was open upon the arrival of the train which plaintiff boarded. Another witness, S. H. McLean, testified that he was ticket agent at Newberry on the 6th May, 1900, and that the ticket office was open for thirty minutes before the arrival of said train. He also testified to the posting of the notices above referred to in the ticket office at Newberry and in the passenger coaches. Circulars issued by the railroad commissioners were offered in evidence, one of which, while fixing the regular passenger rates chargeable on the several railroads in this State, contained a provision allowing a railroad company to charge a passenger ten cents when the fare would be less than that amount. It also contained the following provisions: "In addition to these rates, passengers unprovided with tickets, when opportunity has been afforded them by the railroads to procure the same, may be required by the railroads to pay to the conductor twenty-five cents (25 cents) excess of the fare,

upon receiving from the conductor a drawback ticket for the twenty-five cents, which shall be cashed on presentation at any ticket office of the company within twenty days after date." The plaintiff, in reply, offered in evidence a letter from the railroad commissioners, bearing date 23d October, 1900, in reply to a letter from the counsel for plaintiff, of the 18th of October, 1900, in which the railroad commissioners express "*the opinion* that no more than three cents per mile can be collected from any passenger, whether he presents a ticket or the money in payment of this fare." But they add these words: "We have not issued any orders in the matter." This letter was objected to, but the objection was overruled and the letter was received in evidence; and this ruling constitutes the basis of the fifth exception. Under the charge of the Circuit Judge, the jury found a verdict for the sum of $400, and from the judgment entered on the verdict, defendant appeals upon the several exceptions set out in the record, which, together with the charge of the Circuit Judge, will be reported.

We do not propose to consider the exceptions *seriatim,* but will pass upon the questions which, as we understand it, are presented by the several exceptions. These questions may be stated as follows: 1st. Whether the Circuit Judge erred in practically instructing the jury that the regular fare for passage from Newberry to Helena was, not ten cents, but three cents, which question is presented by exceptions one, two and four. 2d. Whether the Circuit Judge erred in instructing the jury as to what would justify the jury in allowing punitive damages, which question is presented by the third exception. 3d. Whether the Circuit Judge erred in receiving in evidence the letter from the railroad commissioners to plaintiff's counsel hereinbefore referred to.

As to the first question, we would remark, first, that the pleadings, especially when viewed in the light of plaintiff's own testimony, show that there was no controversy as to what the regular lawful fare for passage between the two stations, Newberry and Helena, was. On the con-

trary, it was practically admitted by the plaintiff that such fare was ten cents, and the real controversy between the parties was as to whether the conductor had the right to demand from the plaintiff the excess charge of twenty-five cents, because of the fact that plaintiff had failed to procure a ticket. The allegations in the complaint are that the plaintiff "did offer and tender to the said defendant the fare in money," and that the said defendant "not only refused and declined to accept the lawful fare so offered and tendered by the plaintiff, but demanded of plaintiff an unlawful and excessive fare, before it would transport him to his destination," and also "did eject plaintiff from the train, after having declined and refused, as aforesaid, to accept the lawful fare tendered by plaintiff, because he did not pay the very excessive and unlawful fare demanded by plaintiff." It is very manifest from the plaintiff's testimony that the amount which he offered to pay as the lawful fare was ten cents, and that he made no complaint as to the charge of the amount—his complaint being against the excess charge of twenty-five cents, because of the fact that he had bought no ticket. The Circuit Judge instructed the jury that the defendant had a right, under the law as he laid it down to the jury, to demand this excess charge of twenty-five cents, provided the jury should be satisfied from the testimony, that the conditions upon which such charge was allowed existed, to wit: that the defendant had furnished the plaintiff an opportunity to procure a ticket and he had neglected to avail himself of such opportunity, and if upon this occasion the plaintiff boarded the defendant's train, having had an opportunity to procure a ticket and failed to do so, and when his fare and the excess required of passengers without tickets was demanded, refused to pay the same, the conductor had a right, "under the regulations of the company, if you are satisfied from the testimony that such regulations existed, and that such were the circumstances as I have stated * * * to put the plaintiff off." To this portion of the charge there was no exception, and, therefore, no question can now be

made as to whether it was correct or not, as it must be assumed, in the absence of any such exception, to be correct—as, at least, the law of this case. In a subsequent portion of his charge, however, the Circuit Judge instructed the jury that the lawful fare was three cents a mile (in which we think there was error), and if the plaintiff failed to pay the lawful fare and the excess, under a regulation of the company, then the conductor had a right to eject him from the train; but if he did not, then the conductor had no right to eject him, and if he did the company would be liable. The error of the Circuit Judge, no doubt, resulted from an oversight, in failing to notice that the very same act of 1884, 18 Stat., 759, which he had instructed the jury was not repealed by the act of 1900, contained, not only a provision authorizing the demand of an excess charge of twenty-five cents from a passenger who neglected to procure a ticket, but also provision authorizing a railroad company to "charge for short distances, where the charges per mile would be less than twenty-five cents, the sum of twenty-five cents;" and had also overlooked the fact that circular No. 42, bearing date 2d April, 1896, issued by the railroad commissioners, who are authorized by sec. 1657 of the Rev. Stat. of 1893 to establish just and reasonable rates for the transportation of passengers and freights, also contained a provision authorizing an extra charge of ten cents, when the regular fare would be less than that amount. We think, therefore, that the lawful fare in this case was ten cents and not three cents, as the jury were erroneously instructed. This was a very material error; for under the charge the jury were practically instructed to find a verdict for the plaintiff, as there was no pretense that only three cents was demanded by the conductor, in addition to the excess charge of twenty-five cents; but the undisputed testimony was that ten cents and not three cents was demanded, in addition to the excess charge of twenty-five cents. But if, as we have seen, the conductor had a right to demand ten cents in addition to the excess charge of twenty-five cents on account of the neglect of the

plaintiff to procure a ticket, then the conductor would have a right to eject the plaintiff upon his refusal to pay the amount demanded, as it is admitted he did do. For the undisputed testimony was that the ticket office at Newberry was open for the sale of tickets for thirty minutes before the train boarded by plaintiff left; and the plaintiff, in his testimony, when asked why he failed to buy a ticket, replied: "It was just carelessness, I suppose." If it should be said that there was a conflict of testimony between the plaintiff and the conductor, as to whether a refunding ticket was offered to plaintiff, and the jury may have believed the version of the plaintiff rather than that of the conductor, and that this was a condition precedent to the right of the company to demand the excess charge, the answer is of a two-fold character: 1st. We do not see how such a refunding ticket or check could have been offered to plaintiff until after he had paid the amount demanded; and when he promptly and positively refused to pay the amount demanded, it would have been idle ceremony to offer a rebate check. 2d. But what is more to the point is, that when plaintiff's counsel asked the Circuit Judge to charge the jury: "that if the conductor did not offer a refunding ticket under this regulation, that he had no right to expel him," the Circuit Judge declined to do so, saying that: "I prefer to leave it just as I have charged it—leave all the facts to you;" and to this there was no exception taken. The first, second and fourth exceptions are sustained.

The third exception imputes error in the charge as to what would authorize the jury to find punitive or exemplary damages. The Circuit Judge, after instructing the jury in terms which are objected to, says that if they thought the plaintiff was entitled to recover, "he should have such damages as would compensate him for the injury received, and if the act was done wilfully, wantonly, recklessly or maliciously, he would be entitled, in addition to compensatory damages, to such sum by way of examplary or punitive damages, as you may fix, as a punishment to

the railroad for its wilful, wanton, reckless and malicious act." He then proceeded to use the following language, which is excepted to: "any malice does not necessarily import ill will or prejudice, or anything of that kind. *The intentional doing of any unlawful act would be construed malicious.*" The special error complained of being in the words which we have italicized. This, we think, states the rule in stronger terms than are justified either by principal or authority. One may, intentionally, do an act which proves to be unlawful without the slightest design to do a wrong to any one. For example, one may intentionally cut trees growing on land which proves upon investigation to be the land of another, although he honestly believed at the time that the trees were on his own land, and in such a case no one would say that the act was malicious, although the person who cuts the trees did an unlawful act intentionally. So here, if the conductor demanded an amount which proved to be an unlawful charge, under an honest belief that he had a right to do so, surely his act could with no propriety be construed to be malicious. The rule is more correctly stated in *State* v. *Doig,* 2 Rich., 182, by Judge Wardlaw, as follows: "In law, malice is a term of art importing wickedness and excluding a just cause or excuse. It is implied from an unlawful act *wilfully* done *until the contrary be proved*" (italics ours). This statement of the rule was recognized and followed in *State* v. *Alexander,* 14 Rich., at page 253, where Mr. Justice Inglis, in delivering the opinion of the Court, after stating the rule as above, adds these words: "Clearly importing that such act may be wilful without being actually malicious." This case was also recognized and followed in *State* v. *Toney,* 15 S. C., 412-13, where the late Chief Justice Simpson, in delivering the opinion of the Court, quotes with approval the following passage from the opinion of Mr. Justice Inglis, in Alexander's case: "An act may be unlawful and so involve legal responsibility without being either wilful or malicious, or it may be both unlawful and wilful without being malicious." See, also, to the same

effect, *Avinger* v. *Railroad Company,* 29 S. C., 265. See, also, 12 Encycl. of Law (2d edit.), 24-5. It is clear, there-. fore, that the Circuit Judge erred in laying down the rule as to what would justify the jury in allowing punitive or examplary damages, in saying that: "The intentional doing of an unlawful act would be construed malicious." The third exception must be sustained.

The fifth exception must be sustained. The letter therein referred to contained nothing but the expression of an *opinion,* and that, too, after the commencement of this action, for the letter bears date 23d October, 1900, and the action was commenced 9th June, 1900. It surely needs no authority to show that this evidence was altogether incompetent. It does not purport to show that the railroad commissioners had ever taken any action on the subject referred to. In fact, the language found in the letter—"we have not issued any orders in the matter," shows the contrary.

The judgment of this Court is, that the judgment of the Circuit Court be reversed and the case be remanded to that Court for a new trial.

MR. JUSTICE POPE, *concurring and dissenting.* I agree fully with the Chief Justice of this Court in his opinion, wherein he holds that the appellant is entitled to a new trial upon the third ground of its appeal. But I am not satisfied with that opinion, so far as it relates to the construction placed upon the pleadings of the respondent as well as to the construction of the law of this State governing the rates of fare to be paid by passengers in order to be entitled to be transported on the railroads of the State, for I regard the act of 1900, at pages 457, 458 and 459 of the 23d volume of Statutes at Large of this State, as containing the law now of force within our borders. The title of the act in question is "an act to amend 'an act to require all railroads and railroad companies operating trains and doing business in this State

to provide and operate separate coaches or separate apart-
ment in coaches for the accommodation and transportation
of white and colored passengers in this State.' "    Certainly
the act, so far as its title can do so, requires that *all railroads
and railroad companies in this State* shall provide separate
coaches for white and colored passengers in the State.    Sec-
tion 3 of this act is as follows: "That sixty days after the
approval of this act, the rate for transportation of passengers
on all railroads to which the provisions of this act shall apply
shall not exceed three cents per mile for every mile traveled;
and such railroads shall not be required to have second class
coaches or to sell second class tickets."    Is the appellant
railroad subject to the provisions of this act?    The act went
into force the 20th day of April, having been approved by
the governor on the 19th day of February, 1900.    The only
railroads exempted from the provisions of this act are
found in section 2 of said act: "That the provisions of this
act shall not apply to nurses on trains, nor to narrow gauge
roads or branch lines, nor roads under forty miles in length,
or to relief trains in case of accidents, or to through vestibule
trains not intended or used for local travel, nor to local
freight trains with a passenger coach attached for local
travel, nor to officers and guards transporting prisoners, nor
to prisoners, or lunatics being so transported."  No, the
Southern Railway Company cannot put itself under any of
these exceptions.    Hence the provisions of this act attach
themselves to it.    While the object of the act is directly to
require separate coaches for white and colored people, yet
there is an advantage accruing under this act to the rail-
roads, for by the express provisions of the act, the railroads
are released from the duty of furnishing *second class coaches
or second class fare.*    It will be observed, too, that all past
legislation inconsistent with the provisions of the said act of
1900 is repealed, for section 8 provides: "That all acts and
parts of acts inconsistent with this act are repealed."    Cer-
tainly, therefore, the provisions of the act of 1884, which
allowed ten cents to be charged, are inconsistent with that

provision of the act of 1900, which provides that "the rate for transportation of passengers on all railroads * * * *shall not exceed* three cents per mile for every mile traveled." The distance of Newberry from Helena is one mile. Three cents was the rate therefor and not ten cents. The Circuit Judge was not in error when he charged the jury that three cents was the cost of transportation of one person from the station at Newberry to the station at Helena. So far as the twenty-five cents extra fare is concerned, that question does not enter into this appeal.

I think, therefore, the new trial ought to be confined by our judgment to the third ground of appeal.

I see no error as charged in the first, second and fourth grounds of appeal.

The fifth ground of appeal complains of a harmless error; for although the letter of the railroad commissioners was erroneously received in evidence, still the Circuit Judge himself held that the construction of the act of 1900 required three cents fare for each mile traveled. Thus the opinion of the railroad commissioners to the same effect wrought no injury to the appellant. Let the grounds of appeal be printed.

MESSRS. JUSTICES GARY and JONES *concur in the result and in the separate opinion of* MR. JUSTICE POPE.

A petition for rehearing was dismissed on January 20, 1902, by the following order:

PER CURIAM. An examination of this petition fails to satisfy us that any material fact or principle of law has either been overlooked or disregarded, hence there is no ground for a rehearing.

It is, therefore, ordered, that the petition be dismissed, and that the stay of remittitur heretofore granted be revoked.