14804

COX v. COLEMAN *ET AL.*

(200 S. E., 762)

*Messrs. Haynsworth & Haynsworth,* for appellant,

*Messrs. John R. Bates* and *J. Robt. Martin,* for respond-ent,

January 10, 1939.

The opinion of the Court was delivered by Mr. Justice Fishburne.

On July 18, 1936, there was a collision north of Travelers Rest, in Greenville County, South ·Carolina, between a car owned and operated by the defendant, Norris, and a car operated by the plaintiff, Cox. Cox received personal injuries. The Norris car, severely wrecked, was towed to the garage of George Coleman at Travelers Rest. The Universal Credit Company had a mortgage on the Norris car, with an unpaid balance due thereon of $286.00, and twenty or twenty-five days after the accident this company, the appellant here, repossessed the car and sold it to George Coleman for $75.00, plus towage and storage charges. On August 13, 1937, Coleman in turn sold the car to W. A. Godfrey in Greenville. Subsequently, on November 16, 1936, an action was instituted by the plaintiff, Cox, against Norris and the car, for damages for personal injury. No warrant of attachment was ever issued against the car nor was the car ever attached. A judgment was obtained by default on April 12, 1937, in the sum of Five Thousand ($5,-000.00) Dollars and entered against Norris, as well as against the car.

The instant action was brought for the purpose of recovering damages, both actual and punitive, upon the theory of conversion—that is that the sale of the Norris automobile in August,· 1936, by the Universal Credit Company under its mortgage lien was a conversion of the interest of Cox in the Norris automobile. Before the case was submitted to the jury, all of the defendants were eliminated, upon motion, except the appellant, Universal Credit Company. There was a verdict and judgment in favor of the respondent against the appellant for $200.00, actual damages, and $2,200.00, punitive damages. Upon motion, an order for a new trial *nisi* was granted, unless the plaintiff remitted the sum of $700.00 from the amount assessed as punitive damages. This was done, thus reducing the judgment for punitive damages to $1,500.00.

The sole question for decision on this appeal is whether the lower Court erred in overruling the appellant's motion for a directed verdict as to punitive damages.

The lien claimed by the respondent on the Norris car is based upon Section 8785, 1932 Code, which provides, in part: "When a motor vehicle is operated in violation of the provisions of law, or negligently and carelessly, and when any person receives personal injury thereby, or when a buggy or wagon or other property is damaged thereby, the damages done to such person or property shall be and constitute a lien next in priority to the lien for State and county taxes upon such motor vehicle, recoverable in any Court of competent jurisdiction, and the person sustaining such damages shall have a right to attach said motor vehicle in the manner provided by law for attachments in this State."

It is fundamental that punitive or vindictive damages can be awarded only in instances where there is something more than simple negligence or a technical conversion. There must be malice, ill will, a conscious indifference to the rights of others, or a reckless disregard thereof to justify an award of punitive damages. In the absence of such elements a person injured by the tortious conduct of another may recover compensatory damages for his injury, but no more.

The appellant asserts that the testimony is not susceptible of any reasonable inference going to show any of the elements upon which punitive damages may be based. It admits a technical conversion, but denies that its conduct in selling the Norris car under its mortgage lien furnished the basis for anything more that actual damages.

When the appellant sold the Norris automobile to Coleman, almost a month had elapsed since the collision referred to. No suit or proceeding of any kind had been brought against Norris or the offending car. The appellant knew when it sold the car to Coleman that it had been involved in a collision, but it did not know that a judicial proceeding would ever be brought as a result of the accident. The

testimony shows that Norris had brought an attachment proceeding against the car operated by the respondent, Cox—but the counter action by Cox against Norris and his car was not instituted until November 16th— four months after the accident. After the Norris car had remained for nearly a month in the garage of Coleman at Travelers Rest, where it could be seen by anyone, and was seen by members of the respondent's family, the appellant repossessed it and sold it to Coleman for $75.00, plus towage and storage charges; and Coleman in turn sold it to Godfrey. The car was never removed from Greenville County. The record shows that the sale by the appellant was made openly, after efforts had been made to obtain private bids on the car. It affirmatively appears that finally when inquiries were made on behalf of the respondent, no unwillingness was shown on the part of the appellant, Coleman, or any one else who had anything to do with the automobile, to tell exactly what had been done in connection with it.

In this case there is nothing to reasonably suggest that the appellant acted with any design to injure the respondent, or with any intent to defeat any judgment the respondent might obtain, or any lien the respondent might assert. In selling the Norris car, the appellant acted without suspicious haste, long before any action was brought by the respondent against Norris or his automobile, and only after storage charges were accumulating.

The facts in the case at bar differ materially from the facts appearing in *Waldrop v. M. & J. Finance Corp.*, 178 S. C., 527, 183 S. E., 460. In that case the Finance Company repossessed the automobile and removed it from the jurisdiction only seven days before rendition of the verdict in favor of the injured person. The Court had this to say with reference to the issue on punitive damages (page 462): "Appellant contends that there is no evidence to support a verdict for punitive damages. This contention cannot be sustained. The witness John L. Lancaster testified that Mr. Sikes, secretary and treasurer of the defendant cor-

poration, had stated to him that 'he had a mortgage and wanted to defeat the judgment.' It is true that Mr. Sikes denied this statement, but it made a question of fact which the jury decided in favor of plaintiff."

From a careful review of the entire record, we think ■ the only reasonable inference to be drawn from the facts is that the appellant acted for the protection of its legitimate interests, without malice and without any design or intent to injure the respondent, and no basis is afforded, therefore, for the assessment of punitive damages.

That the act of making the sale was *intentionally* ■■ done by the appellant, is not in itself sufficient to justify punitive damages. As was said by this Court in *Payne v. Cohen,* 168 S. C., 459, 463, 167 S. E., 665, 666:

"When, therefore, the trial Judge charged: 'Then I charge you that an act is done wilfully when it is done intentionally,' he committed error prejudicial to the rights of appellant, and his language in amplification of that charge but added to the harmful effect of it. A man may do an intentional act in ignorance that he is doing a hurt or a wrong to another. Or one may do an intentional act under the honest belief that he is without the law and his rights in the premises. Mr. Chief Justice McIver in the case of *Kibler v. Southern Ry.,* 62 S. C. (252), at page 270, 40 S. E., 556, 563, quoted the italicized words from the charge of the Circuit Judge, and then said:

" ' "The intentional doing of any unlawful act would be construed malicious,"—the special error complained of being in the words which we have italicized. This, we think, states the rule in stronger terms than are justified either by principle or authority. One may intentionally do an act which proves to be unlawful without the slightest design to do a wrong to anyone. * * * ' "

While there is testimony showing actual damages, we do not discover in the record any testimony from which it could reasonably be inferred that there was a willful or wanton disregard of the respondent's rights by the appel-

lant. It follows that a verdict should have been directed for the appellant on the issue of punitive damages.

The respondent argues that when the appellant repossessed the car from Norris following the collision, the latter was not delinquent in paying deferred installments thereon provided for in the mortgage, and for this reason no right existed for such action, and that this constituted a circumstance, among others, for the jury to consider with reference to the issue of punitive damages. Such an issue might arise in an action between Norris and the appellant, but we fail to see the relevancy of it here. As a result of the collision, the Norris car was practically demolished. And so far as this record shows, he has never made the slightest complaint with reference to the action of the appellant in repossessing and selling the automobile.

Judgment reversed as to punitive damages, but affirmed as to actual damages.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and BAKER concur.

MR. JUSTICE CARTER did not participate on account of illness.