15060

NEEL v. CLARK

(8 S. E. (2d), 740)

September, 1939.

*Messrs. Jesse W. Boyd* and *Evans, Galbraith & Holcombe,* for appellant,

*Messrs. J. C. Mooneyham* and *Johnson & Johnson,* for respondent,

April 9, 1940.

The opinion of the Court was delivered by Mr. JUSTICE CARTER.

In 1922, M. G. Clark, father of both plaintiff and defendant, died testate leaving a widow and six children. By his will, he designated Newton T. Clark as testamentary trustee for Nannie Clark Neel, to hold in trust for her one-seventh of his personal property. It was provided that Newton T. Clark, as such trustee, must pay to Mrs. Neel the income from the trust estate during her natural life and at her death to deliver the corpus of such estate to her children. In the division of the testator's personal property, four shares of the capital stock of the Central National Bank of Spartanburg was allotted to this trust. On July 11, 1932, the trustee surrendered possession of this stock to the bank and, in lieu thereof, the bank issued a new certificate to Mrs. Leatha Clark—mother of plaintiff and of defendant—who executed an assignment in blank on the back thereof, and then delivered the certificate to Newton T. Clark. On October 25, 1935, Mrs. Nannie C. Neel and her children executed an agreement releasing Newton T. Clark from all liability under the trust, but the four shares of stock were not mentioned in the release.

On March 3, 1939, plaintiff brought this action for conversion. She alleges that at the time the release was signed as to the other trust property, her demand for the four shares of stock or the value thereof was refused, "defendant representing that he still held the stock for the plaintiff, but that it was worthless at that time"; that the defendant sold the four shares of stock to Mrs. Leatha Clark, without her knowledge or consent, and has never accounted to her for such sums as he received; that he concealed the transaction from her, and has continued to do so up until this time, she only recently having learned of the sale "and of the unlawful and wrongful conversion of the sum received."

Defendant, answering, denies that plaintiff made any demand upon him for the stock, or that he represented to her that he still held it for her, but respectfully shows on the contrary that the stock had been, by the mutual consent of the parties interested, and after discussion by them and with their full knowledge, transferred to Leatha C. Clark for the purpose of saving the trust estate from stockholders' liability, it having been agreed that should the financial depression of that period "run its course" and the bank show solvency and recovery of value of its stock, then Leatha C. Clark would pay the then book value $20.00 per share, but that no such recovery was had and "the bank was subsequently placed in the hands of Receiver and assessment of an amount equal to the value of the stock made against the owner, Leatha C. Clark." Defendant alleges that the release dated October 25, 1935, was not, nor was it intended to be, a dissolution of the trust, but that the "duties, obligations and responsibilities for the maintenance of the trust were thereby transferred from" him to the plaintiff and her four children, who assumed joint responsibility therefor; that such release was "a complete and full accounting for this defendant's trust."

On trial of the case, Judge Merchant refused defendant's motion for a directed verdict, and the jury found for plaintiff $108.60 actual and $500.00 punitive damages. Defendant

thereupon moved the Court to set aside the verdict and dismiss the complaint or order a new trial, which was refused. Defendant now appeals to this Court. While seventeen exceptions are stated, only five questions are raised for our consideration. The first of these is: "Where a trustee shortly before the bank's failure, and for the purpose of saving the trust estate from potential stockholders' liability on national bank stock belonging to the trust, transfers the stock to another to whom the bank issues a new certificate for the same stock, which is simultaneously assigned to the trustee, who continues to hold the stock for the beneficiaries, is the trustee liable for conversion of the stock?"

Black's Law Dictionary defines conversion as, "An unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of the owner's rights."

It is true that there can be no recovery unless at the time of the alleged conversion the plaintiff had the title or right to possession of the property, as shown by Mr. Justice Bonham in *Waldrop v. M. & J. Finance Corporation,* 178 S. C., 527, 183 S. E., 460, 461: "It is settled law in this state that in order to maintain an action for conversion it is necessary for plaintiff to show title or right to possession of the chattel at the time of the conversion." Appellant contends that plaintiff did not have such title or right to possession of the stock as would allow her to maintain an action for conversion, but that he, as trustee under the will, had rightful possession thereof.

In 1932, the trustee had possession of the stock in question in trust for the beneficiaries, or for the beneficial interest of the *cestui que* trust. "A trustee is a person holding the legal title to property, under an express or implied agreement to apply it, and the income arising from it, to the use and for the benefit of another person, who is called the *cestui que* trust." 26 R. C. L., 1271.

However, as seen in 65 C. J., 697, "A trustee is held to great strictness in his dealings with the property in his hands, and he may not appropriate the trust fund to himself without concurrence of the *cestui que* trust with full knowledge of the facts. Consequently, unless he has been released from liability, or the *cestui que* trust has consented to, or ratified, his acts, where the trustee himself wastes, misappropriates, or converts the property to his own use, he is personally liable for the loss or damage caused thereby." In 26 R. C. L., 1372, we find: "When a trustee is given discretion as to the execution of the trust he will be protected so long as he acts honestly and exercises a reasonable discretion." And at page 1373 of the same work: "But the discretion of trustees may, without impropriety, be likened to that of Judges. It is not an arbitrary discretion. It does not include the unrestrained power to do what the trustee pleases."

As seen above, a trustee cannot exercise an arbitrary discretion with regard to the trust property. Dr. Clark did not get the consent of the beneficiaries before making the transfer of the stock; neither did he have such transfer ratified by them. Also, there was testimony for the plaintiff to the effect that Mrs. Neel was not satisfied with Dr. Clark's management of the trust estate and that she made demand that he surrender the trust property to her; that as a result of this demand, plaintiff and her children signed an agreement releasing the trustee of all liability under the trust, whereupon he delivered to them all the trust property except the stock certificate in question; that demand was made for this stock certificate but that he refused to surrender it. We think that Dr. Clark's acts were such as would warrant the trial Judge in submitting to the jury the question of whether Mrs. Neel had such right to demand possession of the stock, or to possession of the stock itself, as would allow her action for conversion.

Gilder Neel testified positively, and no exception was taken to the admission of this testimony, that Mr. Chapman, the Receiver of the Ceneral National Bank of Spartanburg, told him that the stock had been sold, and not merely transferred. Mr. Ward, a stock broker, stated that, on July 13 and 14, 1932, he sold stock of the Central National Bank for $18.00 a share. Dr. Clark testified, however, that he transferred the stock on the records of the bank to his mother's name so as to release his sister from stockholders' liability, but that he received no money as a result of the transaction. The testimony of Mr. Ward and that of Gilder Neel was some evidence from which it might be inferred that the stock had a market value at the time of the transfer and that Dr. Clark actually received money from Mrs. Leatha Clark in the transaction. We are of opinion that it was for the jury to decide whether a technical conversion had been perpetrated, and think that there was sufficient testimony to sustain the verdict as to actual damages.

Questions 2 and 3, which challenge the correctness of the trial Judge in submitting the issue as to punitive damages to the jury are as follows: "Is a trustee liable for punitive damages where, for the purpose of saving the trust estate from potential stockholders' liability on national bank stock belonging to the trust, he transfers the stock to another to whom a new certificate for the same stock is issued, and simultaneously takes from the transferee an assignment of the new certificate of stock, which he continues to hold for the beneficiary? Can punitive damages be sustained against trustee for transfer of bank stock belonging to the trust merely because: (a) the transfer was not specifically authorized by the instrument creating the trust or (b) because the transfer was made without the consent of the beneficiary, or (c) because the transfer was a fraud on depositors of the bank, or (d) because the transfer was unlawful?"

In the first place, the transfer as made could not be a fraud on the depositors of the bank, as there was nothing to show that Mrs. Leatha Clark was financially unable to respond to any demand made upon her for stockholders' liability; appellant's answer alleges that she did so respond, which was not denied.

It is true that "the transfer was not specifically authorized by the instrument creating the trust," and that "the transfer was made without the consent of the beneficiary." As we have already held, these were some of the elements which made out a case of technical conversion. But such mere unlawful transfer cannot form the basis of an award for punitive damages. In *Kibler v. Southern Railway*, 62 S. C., 252, 40 S. E., 556, 559, we find: *"The intentional doing of any unlawful act would be construed malicious,"* the special error complained of being in the words which we have italicized. This, we think, states the rule in stronger terms than are justified either by principle or authority. One may, intentionally, do an act which proves to be unlawful without the slightest design to do a wrong to anyone. We see, therefore, that something more than an unlawful transfer must be shown. In *Cox v. Coleman*, 189 S. C., 218, 200 S. E., 762, 763, the following rule is laid down: "It is fundamental that punitive or vindictive damages can be awarded only in instances where there is something more than simple negligence or a technical conversion. There must be malice, ill will, a conscious indifference to the rights of others, or a reckless disregard thereof to justify an award of punitive damages. In the absence of such elements a person injured by the tortious conduct of another may recover compensatory damages for his injury, but no more."

There was no testimony to rebut appellant's claim that, when the transfer was made in 1932, he acted in good faith and with the honest intention to protect the trust estate from stockholders' liability. No design or intent to injure respondent was shown. We find in this case

none of the elements which would "justify an award of punitive damages."

In the fourth place, appellant asks: "Can one who is entitled only to the income for life from a trust estate recover of the trustee the full value of assets alleged to have been converted by the trustee, she having received all the income yielded by the stock?" Respondent's legal capacity to bring this action was challenged for the first time on motion for a directed verdict and was also one of the grounds of the motion to set aside verdict and dismiss the complaint or order a new trial.

Section 458 of the Code of 1932, provides that: "The defendant may demur to the complaint when it shall appear upon the face thereof * * * that there is a defect of parties, plaintiff or defendant." Section 461: "When any of the matters enumerated in section 458 do not appear upon the face of the complaint, the objection may be taken by answer." And Section 462: "If no such objection be taken, either by demurrer or answer, the plaintiff or defendant shall be deemed to have waived the same."

In *Delleney v. Winnsboro Granite Company,* 72 S. C., 39, 51 S. E., 531, 532, we find: "Section 165 [now Section 458 of the 1932 Code], Code Civ. Proc. 1902, provides the remedy for taking advantage of a defect of parties plaintiff or defendant. When the defect of parties appears upon the face of the complaint, the proper remedy is by demurrer. If the defect does not appear upon the face of the complaint, the objection may be taken by answer. If such objection be not taken either by demurrer or answer, the defendant shall be deemed to have waived the same." See also *Kirton et al. v. Howard et al.,* 137 S. C., 11, 134 S. E., 859, 869, and cases cited therein.

An examination of the answer shows that appellant "denies that any trust was created by the said will or otherwise for the sole benefit of the plaintiff or that this defendant ever held the stock referred to, or any other stock, for the sole benefit of the plaintiff." In the *Kirton case, supra,* it

was held that "it has also been determined that where objection is not taken by demurrer or answer 'that the plaintiff has not legal capacity to sue,' such objection cannot be taken advantage of under a general denial." In *Commercial Insurance & Banking Company v. Turner*, 8 S. C., 107, the defendant's answer was a general denial of "each and every allegation" of the complaint. On the trial, a nonsuit was demanded, on the ground that the plaintiffs failed to introduce evidence showing that they possessed legal capacity to sue. The nonsuit was refused, the Court saying: "The clear intention of these Sections is that the defendant shall give, by his demurrer or answer, specific notice that he intends to rely on one or more of these specified defenses if he wishes to make them available. A general denial of all the facts alleged in the complaint is not a compliance with these requirements of the Code. The object of these provisions is to relieve the plaintiff from any necessity of preparing to meet such objections on the trial, unless notified by the pleadings that the defendant intends to rely on one or more of them." Appellant cannot, by the general denial as made by him, find shelter under the provisions of the Code above quoted. We must hold, therefore, that appellant's objection to respondent's legal capacity came too late.

The last question for our decision is: "Should plaintiff's attorneys have been permitted to argue to the jury that in transferring the stock the defendant committed a fraud on the depositors of the bank, and should the trial Court permit the attorneys to pass on what is a proper inference from testimony, or should the Court pass on what is the proper inference from the testimony?" This issue becomes academic in view of our holding as to punitive damages.

We are of opinion that the judgment of the Court below as to actual damages should be affirmed and that as to punitive damages reversed.

And it is so ordered.

Mr. Chief Justice Bonham, Mr. Justice Fishburne and Messrs. Acting Associate Justices J. Henry Johnson and E. H. Henderson concur.