McCombs **HARDY**, Sr., Appellant,

v.

**INTERNATIONAL PAPER REALTY CORPORATION,** Appellee.

No. 82–1689.

United States Court of Appeals, Fourth Circuit.

Argued April 14, 1983.

Decided Aug. 31, 1983.

James B. Moore, Moore, Flowers & Doar, Georgetown, S.C., on brief), for appellee.

Before WINTER, Chief Judge, ERVIN, Circuit Judge and BRYAN, Senior Circuit Judge.

ALBERT V. BRYAN, Senior Circuit Judge:

McCombs Hardy, Sr. appeals a judgment of the Federal Court for the District of South Carolina that denied him recovery for breach by the International Paper Realty Corporation (IPRC) of an asserted contract. He also questions as inadequate the sum awarded him in damages upon his successful prosecution of a fraud claim against the corporation. Though we agree with the District Court's determination that the plaintiff is not entitled to relief for breach of contract, we conclude that the Court erred in denying the plaintiff punitive damages in his claim for fraud and deceit.

I

In 1979 IPRC, the appellee, listed for sale 560 acres of undeveloped land located in Horry and Georgetown Counties, South Carolina. Appellant Hardy viewed the property while accompanied by a realtor, who, at Hardy's request, made further inquiries. In response, the lister forwarded a form letter containing guidelines for the submission of purchase offers. It stated that any sale required approval by appellee's board of directors.

Harry Gottfried, appellee's agent, was responsible for the negotiation and preparation of offers to buy any South Carolina property owned by IPRC. During the spring of 1979 Hardy and Gottfried met several times; they discussed price, acreage, timber and mineral rights, easements and a number of other details. Eventually, they came to an agreement on all the essential terms of the contract. These included a purchase price of $3,700.00 per acre payable at 10% interest over four years. After settling each issue with Hardy, Gottfried called New York, spoke to someone at IPRC

Howell V. Bellamy, Jr., Myrtle Beach, S.C. (Henrietta U. Golding, Bellamy, Rutenberg, Copeland, Epps, Gravely & Bowers, P.A., Myrtle Beach, S.C., on brief), for appellant.

William L. Pope, Columbia, S.C. (Robinson, McFadden, Moore, Pope, Williams, Taylor & Brailsford, P.A., Columbia, S.C.,

headquarters, and then informed Hardy that the matter had been approved. At one point, Gottfried told Hardy that a "deal" had been struck. Gottfried explained that approval from New York had been obtained, the signing of the contract was a mere formality and that the document would be delivered at the time of the closing which was set for June 28. In truth, the transaction had not been approved and the signing was not a mere formality.

The closing, though scheduled for June 28, was postponed until July 12. However, on July 9, IPRC's board chairman rejected the proposed sale, finding it not in the best interest of the company. By letter, Gottfried advised Hardy that the sale was not approved and returned uncashed two checks appellant Hardy had previously tendered as earnest money.

He then filed suit in the Federal District Court for South Carolina, resting jurisdiction on diversity of citizenship and seeking specific performance on the allegation of the existence of an oral contract between himself and IPRC for the sale of the realty. Alternatively, in a second cause of action he sought damages, actual and punitive, from IPRC based upon a claim of fraud. After a bench trial, the District Court denied specific performance, holding that, under South Carolina law, the evidence did not establish that a contract had been made by the parties. However, it entered judgment in Hardy's favor on the fraud claim, finding that there was evidence to the effect that Gottfried had falsely represented to Hardy that IPRC had approved the contract, that this constituted fraud under South Carolina law and that the corporation, as Gottfried's employer, was responsible for the actual damages Hardy had suffered in consequence of Gottfried's falsehoods. A recovery in the

sum of $4,116.13 was directed by the Court. Punitive damages were specifically denied as unwarranted.

## II

■ Hardy assigns error to the District Court's finding that no contract was finalized committing IPRC to a sale. There was no dispute that Gottfried was without actual authority to bind IPRC. Hardy's claim depends on whether IPRC somehow permitted Gottfried to give the appearance of authority sufficient to bind the company. *See Beasley v. Kerr-McGee Chemical Corp.,* 273 S.C. 523, 257 S.E.2d 726 (1979). The trial judge found that no such representations were ever made by appellee, a conclusion which is amply sustained in the evidence. We have no reason to disturb it.

■ Hardy also challenges as inadequate the amount awarded him as damages for IPRC's fraud. He asks us to enlarge the compensatory amount by including interest on the earnest money deposited by him and certain expenses incurred on behalf of his nephew who came to South Carolina at Hardy's request to assist him in his plans for the use or disposition of the property. However, appellant's loss of interest cannot be said to be a natural consequence [1] of any false statement made by Gottfried. Rather it was a cost incident to his giving a check as part of his offer and, as such, it is not compensable as damage flowing proximately from the fraud. A similar rationale excludes amounts spent to relocate the nephew. The records show that these expenditures began before Gottfried's false assurance was spoken and continued long after Hardy knew that the sale had been disap-

---

1. The Supreme Court of South Carolina has declared:

> As a general rule, one injured by the commission of fraud is entitled to recover such damages in a tort action as will compensate him for the loss or injury actually sustained, and place him in the same position that he would have occupied had he not been defrauded. The recovery is restricted in all cases to such damages as were the natural and proximate consequences of the fraud, and such as can be clearly defined and ascertained, including those which were actually or presumptively within the contemplation of the parties when the fraud was committed.

*Thomas v. American Workmen,* 197 S.C. 178, 14 S.E.2d 886, 888 (1941) (citation omitted); *accord Gilbert v. Mid-South Machinery Co.,* 267 S.C. 211, 227 S.E.2d 189 (1976).

proved.[2] There is no evidence suggesting a causal link between Gottfried's statements and these expenses. The District Court's exclusion of these items was proper.

### III

 Liability for punitive damages depends on the activation of the tortfeasor by "malice, ill will, a conscious indifference to the rights of others, or a reckless disregard thereof . . . ." *Cox v. Coleman,* 189 S.C. 218, 200 S.E. 762, 763–64 (1939). In consequence, the plaintiff in an action for fraud and deceit may recover punitive damages upon a showing that the defendant was "'conscious, or chargeable with consciousness, of his wrongdoing.'" *Dunsil v. E.M. Jones Chevrolet Co.,* 268 S.C. 291, 233 S.E.2d 101, 103 (1977), *citing Carter v. Boyd Construction Co.,* 255 S.C. 274, 178 S.E.2d 536, 540 (1971); *cf. Rogers v. Florence Printing Co.,* 233 S.C. 567, 106 S.E.2d 258, 264 (1958) (The general test for the availability of punitive damages is whether, at the time of the act or omission, the tortfeasor was "conscious, or chargeable with consciousness, of his wrongdoing.").

 Presently, the District Court found that Gottfried knowingly made a false and material representation about the defendant's approval of the contract. Therefore, an award of punitive damages against the defendant is warranted. *Dunsil,* 233 S.E.2d at 103. The status of Gottfried as the defendant's agent does not shield it from these exemplary damages. *Campus Sweater & Sportswear Co. v. M.B. Kahn Construction Co.,* 515 F.Supp. 64 (D.S.C.1979), *aff'd,* 644 F.2d 877 (4th Cir.1981). Although the District Court possessed the discretion to limit the award, it could not deny punitive damages altogether. *Sample v. Gulf Refining Co.,* 183 S.C. 399, 191 S.E. 209, 214 (1937); *Dagnall v. Southern Ry. Co.,* 69 S.C. 110, 48 S.E. 97 (1904). Thus,

the case must be remanded for ascertainment of the amount of punitive damages to which the plaintiff is entitled.

AFFIRMED IN PART; REVERSED IN PART.

---

**2.** The record reveals that payments directly to the nephew began on May 15, 1979. Gottfried's false assurance did not come until some time in June. Hardy continued these payments through January 1981, although he knew that the contract had been rejected as early as July 10 or 11, 1979. Hardy also spent approximate-ly $20,000 for repairs to a house he owned so that the nephew might live there, but these expenditures began on May 9, 1979, before Hardy's first offer to buy IPRC's property was delivered, and continued through August 1979, a month after the contract's rejection.