## TEXAS & PACIFIC R'Y CO. v. J. R. BOND

### (Case No. 1718.)

1. RAILWAY PASSENGER.— The strict rule which authorizes the conductor on a railway train to eject therefrom a passenger who refuses to pay his fare is confined to wilful violators of the contract. It does not apply where a passenger tenders as his fare the sum he has been accustomed to pay on the same road, and who does not wilfully refuse to pay the full fare demanded of him by the conductor.

2. SAME.— A railway conductor cannot act on the assumption that an apparent unwillingness to pay the regular passenger fare on the railway is an absolute and wilful refusal to pay fare, and thereupon put the passenger off the train. Though the passenger, under a mistake as to the proper amount which should be paid, declines to pay the amount of fare demanded, yet time should be allowed him to tender and pay after taking steps to stop the train to put him off, where he does not wilfully persist in his refusal.

APPEAL from Kaufman. Tried below before the Hon. Green J. Clark.

Plaintiff brought suit to recover damages for being ejected from defendant's train, and alleged that on the 28th day of October, 1883, he entered defendant's train at Elmo to be carried to Terrell; that after going about a mile, defendant, after receiving from him twenty cents, a part of the fare, declined to receive any further sum for such fare,— though the same was tendered to the conductor,— and with force and violence ejected him from the train at a point other than the usual stopping place, thus compelling him to walk a distance of six miles, whereby he was greatly injured in his person, feelings and estate; that this ejection was done in the presence of a large number of people, and in an insulting, rude, wanton and malicious manner, and that defendant ratified the said acts of its con-

ductor, although it well knew that he was a person of turbulent, quarrelsome and oppressive disposition, and disposed to insult, abuse and oppress passengers, and unfit to be a conductor of a passenger train.

In a trial amendment plaintiff alleged, in substance, that after getting on the train he paid the conductor twenty cents, which was the regular fare between said points where the passenger had a ticket; that the conductor accepted the twenty cents and then demanded ten cents more, which he claimed was due as additional fare when the passenger had no ticket; that in compliance with such demand plaintiff tendered the conductor the additional ten cents, which made the fare four cents per mile from Elmo to Terrell, but the conductor then refused to receive it, and ejected him from the train as aforesaid.

Defendant pleaded, in substance, that if plaintiff was ejected from defendant's train it was because he had no ticket entitling him to ride on defendant's train, and because he refused to pay the amount of fare prescribed by defendant and allowed by law.

Verdict in plaintiff's favor for $154, on which judgment was rendered.

*Leake & Henry*, for appellant, on the proposition that the offer to pay fare comes too late after a refusal to pay, and steps are taken to eject the passenger, cited: Stone v. Chicago & Northwestern R. Co., 47 Ia., 82 (29 Am. Rep., 458); Hoffbauer v. Delhi & Northwestern R. Co., 52 Ia., 342 (35 Am. Rep., 378); Keeley v. Boston & Maine R. Co., 67 Me., 163; Skillman v. Cincinnati S. & C. R. Co., 13 Am. & Eng. R. R. Cas., 31; Downs v. N. Y. & N. H. R. Co., 36 Conn., 287; McLure v. Philadelphia, etc., R. Co., 34 Md., 532; Chicago, etc., R. Co. v. Herring, 57 Ill., 59; Swan v. Manchester & Lawrence R. Co., Ames' Eng. R. Cas., 327; Toledo, etc., R. Co. v. Wright, 11 Gen. Law Journal, p. 47.

*Manion & Adams* and *J. O. Terrell*, for appellee.

Willie, Chief Justice.— The first proposition of appellant under his second assignment of error, viz.: when the fare is paid on the train, a railroad company has the right to charge four cents per mile, is not questioned on the part of appellee's counsel.

The second proposition, which brings in question the refusal of the court to give a special charge asked by counsel for appellant, presents the only point of any importance in this case. The charge asked was as follows:

"That if they find from the evidence that the regular fare between Elmo and Terrell was thirty cents when paid on the train, and that this was known to plaintiff on the day he was ejected from defendant's train, and further find that the plaintiff only offered to pay twenty cents for such fare, when applied to by the conductor, and showed an unwillingness to pay the regular fare of thirty cents, and told the conductor that he had better put him off, and that thereupon the conductor pulled the rope to stop the train, before he was aware that plaintiff had proposed to pay the extra ten cents, and that at the time the tender of the extra fare was made (the train) had come to a halt, or was stopping at the instance of the conductor, then the plaintiff had no legal right to tender said extra ten cents and continue his journey after he had shown such unwillingness to pay said extra fare, and after he had told the conductor to stop his train and put him off; that it is too late to offer to pay fare after the conductor has taken steps to stop the train where a passenger has refused to pay full fare."

It will be observed that this charge, taken as a whole, makes the unwillingness of a passenger to pay regular fare, coupled with the remark that the conductor had better put him off, amount to a refusal to pay his passage money. It further gives the railroad company the right to eject the passenger, under such circumstances, even if he offers to pay before the train halts, provided the conductor has taken steps for stopping it.

It is undoubtedly a general principle that "a wilful refusal to pay the proper fare justifies expulsion from the train." Thom. on Car., p. 640. The authorities seem to hold, also, that "after a person has refused to pay his fare, and is being put off the train, he acquires no right to passage by then tendering the fare demanded." Id.; O'Brien v. Bos. & War. R. R. Co., 15 Gray, 20; Hoffbauer v. D. & N. W. R. R. Co., 52 Iowa, 342. To bring a case within these principles there must be a wilful, or at least a positive, refusal to pay proper fare, or in other words a boarding or remaining upon the train with the intention of defrauding the company or resisting demands for the payment of fare. Thom. on Car., p. 640.

The distinction between such a case and the present is very apparent. Bond did not enter the car with intent to defraud the company or resist its demands for full pay. He went aboard of it expecting that he would be taken to Terrell for twenty cents, paid to the conductor as usual. He tendered that amount to the conductor in charge — with whom he had never traveled before — and upon being required to pay ten cents more, told the conductor that he

had never been required to pay this additional amount, and when informed that the charge was four cents per mile when paid on the train, objected to paying it, and told the conductor, good humoredly, if he would stop the train he would get off.   This was a mere discussion between the parties, in which Bond was endeavoring to persuade the conductor to allow him to make the journey for twenty cents, and the conductor was attempting to convince Bond that he could not do so, but must have the full fare required when paid on the train.   It was just such a discussion as is liable to take place frequently between a conductor and a passenger.   It may arise as to the validity of a ticket, or the time when it expired, or upon like subjects, in which the conductor is expected to see and know the difference between an attempt to impose upon him, and a mere mistake of facts on the part of a passenger.   The present conductor should have known from the character of his discussion with Bond the false impression as to what he would have to pay under which the latter boarded the train, and the good humored manner in which he asked to be put off, and the small amount in controversy, and the great distance which Bond would have to walk if expelled from the cars;   that he was no trespasser, and that he did not wilfully and would not persistently object to paying the fare exacted of him.   He should have allowed him a reasonable time to consider as to paying the additional money, and not acted so hastily in pulling the bell and taking steps to eject the appellee from the cars.   As he had acted thus hastily, and the appellee tendered the money immediately upon the rope being pulled — the first evidence he had that the conductor really intended to eject him,— the money should have been received and the appellee restored to his rights as a passenger.

However correct the general principles announced in the charge might have been — which we do not decide — the appellant was not entitled to have them applied to the facts in evidence.

The foundation upon which these principles rest, viz., that the passenger is a trespasser and is wilfully attempting to obtain passage upon the train in defiance of the rights of the company, does not exist in such a case.   A mere discussion of the propriety of making such payment under the circumstances, and raising objections to the demand of the conductor, was not a positive refusal to pay the fare.   The conductor, in hastily accepting it as such, acted without proper consideration, and should not have refused payment when it was offered him immediately upon his taking the first step towards stopping the train.   If the court had given the charge as asked, he would have announced it as law, that any display of unwillingness

on the part of a person to pay money exacted as fare from him by the conductor, no matter what may have been the manner of that officer, nor what the character of the refusal, nor how pleasantly may have been the manner of making the suggestion as to putting the passenger off, would authorize his immediate expulsion, and cut him off from all right to continue on the train, no matter how soon thereafter he tendered his fare. We cannot accept this as law on general principles, and we know of no case in which it is sustained by the courts.

We prefer the doctrine as laid down in Tennessee, viz.: That the strict rule is confined to wilful violations of contract upon proper demand. It will not apply when a passenger has boarded the train under an honest belief that he could pay his fare in a particular form, and the amount demanded is tendered while he is being ejected. Louisville, etc., R'y Co. v. Harris, 16 Am. & Eng. R'y Cas., 374.

The same rule applies when the passenger is under an honest but mistaken belief that he could obtain passage for a certain sum, and a greater rate is required of him.

It does not matter that the law allows a greater charge; it is enough that the passenger has been accustomed to travel for the amount he offers, or does not wilfully persist in paying less than the company rate when he is informed that he will be required to do so. Passengers are entitled to a reasonable time within which to comply with the conductor's demands, and he has no right to conclude that any apparent unwillingness so to do is an absolute and wilful refusal to accede to them. See L., N. & Gt. S. R. R. Co. v. Guinan, 13 Am. & Eng. R'y Cas., 37.

The necessities and conveniences of railway travel neither require nor justify such haste as was used by the conductor in the present case, and as he allowed no sufficient time for making the tender after attempting to convince Bond that the additional ten cents should be paid, he should have accepted it after taking steps towards stopping the train for the purpose of expelling the appellee.

To hold differently would be to put the traveling public at the mercy of railroad employees, and subject passengers to inconvenience and damage, unless they yield implicitly to any demand, however unreasonable it might at first appear, provided it should in fact be lawful and proper.

We think that under the facts of the case applicable to the charge it was correctly refused.

As to the remaining assignment of error, it is sufficient to say that there is a conflict of testimony as to whether or not the conductor

saw the money when tendered.   The plaintiff's witnesses prove very conclusively that he had every opportunity of seeing it, if he did not.   The plaintiff did all that he could to enable the conductor to see the money, and if it was not seen, the plaintiff should not suffer the consequences.

The judgment is affirmed.

AFFIRMED.

[Opinion delivered November 21, 1884.]

