## WEBER v. SOUTHERN RY. CO.

1. EVIDENCE—RAILROADS—PASSENGERS.—In suit against railroad for damages for ejecting passenger in response to issues raised by pleadings, it is proper to permit witness to testify that he offered to pay plaintiff's fare.

2. RAILROADS—PASSENGERS—FARE.—Whether a regulation by a railroad company as to excess rates and rebate checks is reasonable, is a question of law.

3. IBID.—IBID.—IBID.—Railroad companies have no right to charge passenger who does not buy tickets when opportunity is given, excess fare and give rebate checks therefor between points within this State. MR. JUSTICE JONES *dissents.*

4. IBID.—IBID.—May a railroad company, at a station, refuse admission of ejected passenger to its cars, upon offer to pay fare after ejection?

5. NEW TRIAL.—THIS COURT has no power to grant new trial because of excessive damages.

Before WATTS, J., Union, June, 1902. Affirmed.

Action by B. F. Weber against Southern Railway Co. From judgment for plaintiff, defendant appeals.

*Mr. C. P. Sanders,* for appellant, cites: *As to the excess fare and rebate check:* 1 Ell. on R. R., sec. 199; 4 Ell. on Ry., sec. 1516; 1 Reaf. on Ry., 4 ed., 88; 2 Wood on R. R., 2 ed., 1198; 5 Ency., 2 ed., 482; Hutch. on Car., secs. 587-8; 6 L. R. A., 560; 75 Ill., 125; 18 Am. R., 454; 7 Am. Ry. R., 168; 10 Id., 66, 233; 11 Id., 148; 16 Id., 262; 19 Pa. R., 107; 28 Am. R., 773; 34 Am. & Eng. Ry. Ca., 260; 41 Am. Dec., 473, and note; 18 Ill., 460; 26 Am. & Eng. R. R. Ca., 258; 17 Am. St. R., 416; 34 Am. & Eng. R. R. Ca., 266; 2 Am. R., 106; 34 Am. R., 283. *After ejection, passenger cannot return:* 16 L. R. A., 54; 15 N. Y., 455; Hutch. on Car., 2 ed., sec. 589; 47 Am. R., 436; 15 Gray, 20. *If re-ceived, he should pay fare from starting point:* 29 Am. R., 458; 80 N. Y., 236; 29 Vt., 160; 1 Fet. on Car., 785; 42 Fed. R., 784; 101 N. Y., 367; 104 N. C., 312; 91 N. C.,

512; 32 N. J. L., 309; 40 Ill., 42. *Verdict was excessive and should have been set aside:* 15 Am. R., 423.

*Messrs. V. E. DePass* and *Stanyarne Wilson,* contra, cite: *Can ejected passenger at regular station enter car, if he tenders full amount originally demanded?* 29 Am. R. 459; 16 L. R. A., 53; 15 N. Y., 455; 104 N. C., 40; 26 A. & E., 186; 13 A. & E., 35; 18 F. R., 155; 77 Am. Dec., 347; 11 A. & E., 90; 18 A. & E., 364, 368; 16 A. & E., 374; 15 Gray, 20; 15 N. Y., 455; 32 N. J. L., 309; 17 U. C., 428; 50 Am. R., 532; 35 Am. R., 278; 42 Am. R., 437; 7 Hun., 140; 30 Hun., 398. *As to excess fare:* 13 A. & E., 34; 62 S. C., 271; 64 S. C., 242; Code, 1902, 2165.

March 24, 1903. The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE. This action came on for trial before the Hon. R. C. Watts, as Circuit Judge presiding, and a jury. The object of the action was to recover in the aggregate the sum of $1,995, which the plaintiff alleged was the damages sustained by him under the two causes of action set up in his complaint. The Circuit Judge in his charge to the jury described the allegations of the complaint as follows: "He alleges in his complaint that he boarded a train of defendant company in 1901; that he got on the train at Union, S. C. He says his wife and six children were anxiously awaiting his return with some medicine which he came to Union to get; that he got the medicine and got on the car, and when the train got a short distance from Union, the conductor, who represented the defendant, came to plaintiff and called for his fare. He told the conductor that he hadn't had time—that is, plaintiff hadn't had time— to purchase a ticket before boarding the train, and tendered the conductor the regular fare from Union to Jonesville, which was thirty cents, that amount being included in the coins which he gave him, and that he had no more money. He said the conductor told him he would have to pay twenty cents more. After he told the conductor he didn't have it,

then the conductor told him he would have to borrow it or get off the train. He said he asked a friend to lend him that amount, and the friend told him he did not have it; that he then asked the conductor to lend it to him until he got to Jonesville, and the conductor refused and called him a fool, and went into another car, taking the money with him. He says in a short time the conductor came back to plaintiff and dropped the money in his hand; plaintiff thought it was five cents change due, but upon finding it to be thirty-five cents, he refused to accept it, and placed thirty cents of it down where the conductor could get it, telling him at the time that he had paid the fare. He said when the train reached Bonham, a station between Union and Jonesville, the conductor, accompanied by three trainmen, took hold of plaintiff, took up the thirty cents, and with force and violence, and with intent to degrade, humiliate, mortify and wound plaintiff in his person and feelings, wantonly, unlawfully, maliciously and without regard to his rights, dragged him out of the car and jerked him off to the ground. He says by reason of the unlawful and oppressive conduct and violence of the defendant towards him, the inexcusable cursing to which he was subjected by it, and the outrageous invasion and disregard of his rights as a passenger on the train, he was damaged in the sum of $495.

"In the second cause of action, he alleges that on the same day he was at a station called Bonham station, on defendant's road, desiring to go home, where his wife and sick · children were anxiously awaiting him and needing the medicine which he got for them that day, and with which he was returning on said car, or at least hoping to return; and having at hand the means, and being fully prepared and intending in good faith to pay any amount of fare which defendant might require or demand of him to carry him on said train to Jonesville, so soon as he should have the opportunity to do so, having first tendered the amount of the fare to the conductor, twenty-five cents, in addition to thirty cents which he had already handed him, which was more

than the fare, steppped upon the second step of the platform of the passenger car of defendant, intending to ride as a passenger on said car, and thereby became and was a passenger thereupon. He says, immediately before he could enter the car, said conductor, with force and violence, and with intent to degrade, humiliate, mortify and wound plaintiff in his person and feelings, wantonly, unlawfully, maliciously and in utter disregard of his rights, jerked him therefrom into the ditch. He says, upon remonstrating with him and pleading the cause of his sick children at home, and telling him of the medicine he had for them, said conductor refused to let him enter the car. He says a friend of his was present, offering to pay said conductor any amount he might demand, if he would permit plaintiff to ride to Jonesville; that he cursed violently and said plaintiff should not ride for any amount, and flagged the engineer to move on. Plaintiff was again getting on the car, which was then in motion, when he was kicked off; he then ran up to the front end of the car, and was a passenger going into the car, when the conductor, who had run through the car, and who was a large and strong man, caught hold of him and jerked him out of the car and motioned the engine to move faster. He says he caught the back rail and was endeavoring to swing around the step, when the conductor cursed him and kicked him in the side and on the hand, tearing the skin off his fingers, and finally kicking him on the elbow and knocking him to the ground, to his great and permanent injury and suffering. He said thereby he was forced to get home the best way he could, suffering much bodily pain and great mental anguish. He says by reason of the unlawful and oppressive conduct and violence of the defendant towards him, the outrageous cursing and abuse to which he was subjected by it, and its brutal invasion and disregard of his rights, he was damaged $1,500. He, therefore, asks for damages in both causes of action $1,995."

Except as to its corporate character, and that the plaintiff entered its passenger coach at Union, S. C., and was ejected

at the station named Bonham, the Southern Railway Co. denies the allegations of the complaint. Both sides introduced testimony as to the issues made by the pleadings. There was objection as to the competency of the testimony of one of the plaintiff's witnesses, that of Mr. Whitlock, but the Circuit Judge overruled the objection. Both sides offered requests to the Circuit Judge to be passed upon in his charge to the jury; but the Circuit Judge read the requests to charge in the presence of the jury, and in his general charge passed upon the same. The jury returned a verdict in favor of the plaintiff in the sum of $1,500. A motion was then made for a new trial, based in part upon the charge of the Judge, and also because the finding of damages was excessive in amount. This motion was overruled. Thereupon the defendant appealed to this Court upon nine grounds, as follows:

"1. That his Honor erred in allowing the witness, Littlejohn, to testify as follows 'I told the captain to let the man go; I said I will pay his way;' and in ruling and holding that this was a part of the *res gestae;* and also in ruling and holding that even if a man is lawfully ejected from a train, if this ejectment is at a regular station, then that he could by either buying a ticket or offering to pay his way, to re-enter this train and continue his journey. The error being, as it is respectfully submitted, that where a man violates the reasonable and lawful rules of the company or breaks his contract, he forfeits his right to ride on that train; and if he is then lawfully ejected, even though it be at a station, that he could not by offering to pay his fare from that station, or even from the commencement of his journey, regain his right to re-enter the same train and force the railroad company to carry out a contract which he himsef had broken. It also, being respectfully submitted, that Mr. Littlejohn being a mere volunteer, the conductor was not bound to receive any money from him, and hence his statement or what he said to the conductor is incompetent, and his Honor should have so held.

"2. That his Honor erred in charging the plaintiff's eleventh request, to wit: 'There is no law to justify a railroad company in refusing to permit a passenger to take passage on one of its trains at a station, who shows himself prepared and willing to pay the fare, even if he has been ejected at such station because of non-compliance with the rules of the company;' and also in charging, 'I charge you further, as matter of law, that if this plaintiff here refused to pay his fare; if he did not have a ticket and refused to pay his fare, or refused to pay excess, and if the conductor stopped that train at a station where people were accustomed to get on and off, if he ejected this plaintiff from the train at a station on the defendant's road where parties were accustomed to get on and off, and then plaintiff attempted to board that train again with an honest intention and with ability to pay, an honest intention to pay his fare, having the ability to pay, and he attempted to board that train in a peaceable manner, and not in a disorderly, rude and violent or angry manner, not with the intent to try to beat a ride, but with the honest intention to pay and with the ability to pay his fare, then it was the duty of the conductor to receive him, and he could not eject him at that station. Now, if he stopped at a place other than a station and ejects a passenger, the passenger has no right to go back on; but if the conductor stops at a station where passengers are accustomed to get on and off, and ejects a passenger at that point who refuses to pay his fare, the passenger then has a right to go to the ticket office and get a ticket, if the ticket office is open, or he has got a right to get back on that train in a peaceable, quiet manner; and if he gets on the train with the intention of behaving himself and with the intention to pay his fare, and he has the money and t he ability to do it, then it is the duty of the railroad to receive him. If they eject him, it is unlawful; if they eject him then, then I charge you as a matter of law, he has a right to get on that train and ride and offer himself as a passenger under such circumstances as that.' The error being, as it is respectfully submitted: *a.* That his

Honor failed to recognize the rule of law, that where one party to a contract breaks the contract, then that such person cannot after this, by offering to comply, regain any rights under the contract which he has broken, and force the other party to this contract to carry it out. *b.* That by his Honor's charge, he instructed the jury in terms, that a person who had violated the rules of the company and been lawfully ejected, if this ejectment took place at a regular station, that such person could by paying his fare from that point regain the right which he had forfeited to re-enter the same train; whereas, his Honor should at least have instructed the jury that before he could re-enter such train, he must pay the fare and excess from the point where his journey commenced.

"3. That his Honor erred in not refusing the plaintiff's thirteenth request, to wit: 'Where a railroad company has a rule or regulation concerning the collection of excess rates and the issue of rebate tickets, it is a question for the jury whether such rule or regulation is reasonable, and it should not be enforced if unreasonable.' It being respectfully submitted that the question of whether a rule or regulation concerning excess rates and the issuing of rebate tickets, and whether the same is reasonable or unreasonable, is a question of law for the Court and not a question of fact for the jury.

"4. In refusing to charge the defendant's second request, to wit: 'Where one refuses to pay the amount which the railroad company has the right to charge and collect, such person becomes a trespasser, and if the conductor puts him off, he loses his right to be carried as a passenger on such train, and cannot, by offering to pay the amount after he has been ejected, regain or restore his right to be carried on this particular train.' And in modifying this request so as to instruct the jury, that if a passenger, under such circumstances, is ejected at a regular station, then that such passenger could, by purchasing a ticket, or offering to pay his way from that point, regain his right to re-enter such train and be carried on his journey. The error being, as it is

respectfully submitted, that his Honor failed to recognize the rule of law to the effect that where one person breaks a contract, or where a passenger is rightfully ejected, then that such person or passenger could not thereafter restore his rights by offering to comply with the contract which he had broken, or by making a new contract to take the place of the old.

"5. That his Honor erred in modifying the defendant's fourth and fifth requests to charge, and in instructing the jury that while a passenger is bound to obey the reasonable rules and regulations of the company, and that while a railroad company has a right to charge an excess fare of twenty-five cents where a passenger does not purchase a ticket, if the ticket office be open for thirty minutes before the departure of the train; that the railroad company could lawfully eject such person upon refusing to pay such excess, provided it offered the passenger a rebate ticket, yet, that if such ejectment took place at a regular station, then that such passenger could, by purchasing a ticket, or offering to pay his fare from that point, re-enter such train and regain his right to be carried thereon; and that if the railroad company prevented him from so doing or expelled him therefrom, it would be liable to him in damages; the error being, it is respectfully submitted, that his Honor failed to recognize the rule of law which holds, that where one person has broken his contract or forfeited his rights thereunder, then that such person could not thereafter regain his rights by offering to comply therewith, nor could he compel the party to the contract to enter into a new one with him.

"6. Because the law of this case, under his Honor's charge, being, that the railroad company had the right to charge an excess fare of twenty-five cents, where a passenger had failed to procure his ticket, where full opportunity had been offered to him to do so; and to eject such passenger upon his refusing to pay such excess, provided it offered him a rebate ticket, that it was error for his Honor to instruct the jury, that if such ejectment took place at a regular sta-

tion, then that such passenger could re-enter the train and regain his rights to be carried thereon by purchasing a ticket at such station, or by tendering his fare therefrom; the error being, that when one person forfeits or waives his rights under a contract, either express or implied, and refuses to comply with the terms of his contract, then that such person has no rights under such contract, and cannot thereafter, without the consent of the other party, regain any rights thereunder by offering to comply therewith.

"7. Because, after instructing the jury as follows: 'I charge you as matter of law, that if the railroad commissioners allowed the train to fix rules requiring persons to purchase a ticket at the depot of the company, if the office is opened thirty minutes before the train leaves, and the passenger fails to get a ticket, allowed the railroad company to charge an excess of twenty-five cents by giving a rebate ticket, then that is a reasonable rule, and they have a right to adopt such a rule as that. Now, if the railroad commissioners permitted the Southern Railway Company, the defendant here, to require the plaintiff, who got on the train without a ticket, if the ticket office was opened a half an hour before the train left the station, to pay twenty-five cents in excess of the regular fare, three cents a mile, that was a reasonable rule, and it would be the duty of a passenger to pay it, provided they gave him a rebate ticket—that is, giving you a slip which will enable you to have that money refunded at any station he got off at which the company had a station master. Now, if the plaintiff here boarded this train, going from here to Jonesville, and didn't get a ticket, and if the ticket office was opened thirty minutes before he left, then I charge you as a matter of law that the conductor had the right to exact from him twenty-five cents in excess of three cents a mile, provided he gave him a rebate ticket; that it was the duty of the passenger to pay that, and if he didn't pay it and refused to pay it, then the conductor had a right to eject him, and in ejecting him he had a right to use requisite amount of force, but he had no right to use unnecessary

force in ejecting him.' His Honor erred in instructing the jury in substance, that if the ejectment took place at a point where there was no station, that such passenger could not by offering to pay his fare re-enter the train and continue his journey; but that if such ejectment took place at a station, that he could by purchasing a ticket or offering to pay his fare, re-enter such train and continue his journey, and that the railroad company would have no right to prevent such passenger from riding thereon; and if the company did prevent him from doing so, or if it did eject him thereafter from the train, that such conduct on the part of the railroad company would be unlawful, and that such passenger could recover damages therefor. The error being, as it is respectfully submitted, in leading the jury to believe that the rights of a passenger who has been lawfully ejected at a station are different from those of one who has been lawfully ejected at a point where there is no station; and in instructing the jury in effect, that where a passenger forfeits or waives his contract with the railroad company, and is lawfully ejected by failure to comply with the lawful and reasonable rules of the company, then that such passenger, if he is ejected at a regular station, could re-enter such train and regain his rights to ride thereon, notwithstanding he had broken his contract with the company.

"8. Because his Honor erred in charging, 'If he (meaning the conductor) ejected this plaintiff from the train at a station on defendant's road where parties were accustomed to get on and off, and then the plaintiff attempted to board that train again with the honest intention and with ability to pay his fare—in a peaceable manner and not in a disorderly, rude and violent or angry manner, and not with intent to try to beat a ride—then it was the duty of the conductor to receive him, and he could not eject him at that station.' And also in charging, 'Now, if this plaintiff here fractiously refused to pay his fare, the jury can take that into consideration; but if he was within the law, if he was behaving himself in a peaceable manner, wanted just his ride, and was

not boisterous or violent or discourteous, anything of that sort, all the circumstances in that case can be considered by the jury.' And also in charging: 'Now I charge you that if this man had a right under the law as I have defined it to you, to ride to Jonesville, if this conductor unlawfully ejected him, then you will find a verdict for the plaintiff for such damages as you think he has sustained; and if you think that it was a wilful, high-handed, outrageous invasion of his rights, in addition to such actual damages as he has sustained, you can give such damages as you see proper under the testimony in this case.' And also in charging, 'If you think this man was on that train and he had a right to be there under the law as I have defined it to you, and that his rights were invaded by the defendant company, then you award him such damages as you think he has sustained.' And also in charging, 'If you think there was a wilful, wanton, high-handed and oppressive, outrageous invasion of his rights by the defendant company, and he was mortified, humiliated, then if you believe that—and that is for you to determine—then you can give, in addition to such actual damages as he has sustained, as in your opinion he has sustained, such damages in the way of punishment, punitive damages, smart money, that you wish to award, not exceeding, however, the amount asked for, because you cannot give any more than that.' The error being, it is respectfully submitted: *a.* That this was a charge upon the facts involved in the case. *b.* That this was a statement of facts which was exclusively for the jury. *c.* That his Honor in so charging went beyond the limits of the Circuit Judge as defined and limited by article V., section 26, of the Constitution of this State, and charged and stated facts which were for the jury. *d.* That his Honor in so charging went beyond the province of the Judge and invaded the province of the jury.

"9. In not granting the defendant a new trial on the grounds: (1) On account of errors in his Honor's charge, as show by the exceptions 1, 2, 4, 5, 7 and 8 herein. (2)

Because the verdict herein is excessive, and shows that the jury was influenced by passion and prejudice."

We will now endeavor to pass upon these questions which we think fairly arise from the record.

1. Did the Circuit Judge err in allowing the witness, Littlejohn, to testify as is set out in the first ground of apppeal? We think not, for the defendant went to trial with an allegation in the complaint, "Upon friends of plaintiff offering to pay said conductor any amount he might demand if he would permit the plaintiff to ride to Jonesville, he (the conductor) cursed violently and said, 'plaintiff shall not ride for any amount.'" In its answer, the defendant traversed these facts. Now, therefore, when the witness, Littlejohn, proposed to testify thereto, the defendant objected. The Circuit Judge admitted the testimony, in which ruling we think he was correct. This exception is overruled.

2. Was it error in the Circuit Judge in not formally telling the jury that he intended to overrule the thirteenth request to charge, as presented in these words: "13. Where a railroad company has a rule or regulation concerning the collection of excess rates and the issue of rebate tickets, it is a question for the jury whether such rule or regulation is reasonable, and it should not be enforced if unreasonable." The Circuit Judge was most careful to inform the jury by his instructions to them, that whenever his general charge was not in accord with the plaintiff's requests to charge, that such requests were refused. It is true, he did not formally say to the jury, I overrule the plaintiff's thirteenth request to charge, but he did, time and time again, in his general charge to the jury, instruct them that it was *a matter of law* that railroad companies could issue a regulation by which if a man refuse to pay his fare, or also refuse to pay his fare and twenty-five cents additional as an excess rate, it was lawful for the conductor not only to eject him, but if such passenger refused to leave the train on the demand of the conductor, the latter could lawfully use

force sufficient to put him off, provided the expulsion was not made on a trestle, bridge or in a swamp. This exception is overruled.

3. Did the Circuit Judge err when he instructed the jury in his charge, that railroad companies had the power in this State to charge and exact of any passenger on their trains, who took passage thereon at a station where the ticket office was kept open for thirty minutes before the arrival of such train at such station, the sum of twenty-five cents in addition to and in excess of the regular fare? This is an important question. It has been before the Court before. The importance of this question is fully appreciated by the appellant in the case at bar, for an inspection of the grounds of appeal will show that it enters in some form or other into all but two grounds of appeal. We might say that this question might have been avoided in this appeal. The plaintiff, who is the respondent here, did not appeal from the Judge's charge, but the defendant has by his appeal raised it, not, however, in the specific form we have stated it, but as a basis of alleged errors in the charge of the Circuit Judge. We will meet the question thus raised. There can be no question that it would be far better for the traveling public as well as the railroads that each passenger should obtain a ticket before boarding a train. In the year 1884, our State legislature passed an act by which passengers on railroad trains were stimulated to buy a ticket before boarding passenger trains. "Sec. 2. That section 1451 of (A. A. 1883, pp. 485-486), be amended by adding at the end thereof the following: And railroad companies shall have the right to charge twenty-five cents extra when fare is not more than two 50-100 dollars, and fifty cents when it is over that amount, in all cases where passengers get on at stations where tickets are offered for sale, neglect or refuse to purchase tickets: *Provided,* This shall not apply to passengers on accommodation trains: *Provided, further,* That offices for the sale of such tickets shall in all cases be opened not less than thirty minutes before the time fixed for the de-

parture of trains." 18 St., 759. This seems to have been the first departure from the old custom of paying the exact fare for each mile traveled, and in the circular issued by the railroad commissioners (Circular No. 32), on 13 August, 1894, the exact language of the foregoing statute was embodied; but on May 4th, 1895, an addition was made, thus: "On and after January 10th, 1895, Circular No. 32, issued by the board, 17th August, 1894, shall have added thereto the following: *Provided,* That the conductor shall give the passenger a return check for the amount of excess charged, to be redeemed upon presentation to any ticket office of the company." By the foregoing recitals it will appear that up to 10 January, 1895, the excess of fare authorized to be collected from persons failing to buy tickets went into the treasury of the railroads, but after that date this excess was ordered to be paid to the passenger who paid the same at any ticket office of the railroad company so charging this excess, without any restriction as to the time when such excess should be paid. By the testimony in this case the following circular was issued by the defendant railroad:

"Southern Railway Company, Passenger Department.
Circular No. 1900-03, reissued superceding Circular No. 797.

File No. 52785.

Washington, D. C., January 27, 1900.

Rebate Tickets in South Carolina.

To all Conductors and Ticket Agents in South Carolina:

Conductors have been furnished a supply of rebate tickets, Form C. R. C., a facsimile of which is printed below, for use under the following instructions:

A rate of 25 cents higher than agent's rate should be charged for each fare collected in cash between any two stations within the State of South Carolina, under the rules governing the collection of conductor's rates.

A rebate ticket, Form C. R. C., should be issued to the passenger for each excess cash fare collected between any two stations within the State of South Carolina. These

24—65

tickets should be written up to show: (*a*) Name of conductor; (*b*) points between which fare is collected; (*c*) train number, and punched to show the date of issue, whole or half fare and amount collected, as designated. The duplicate ticket shoud be examined carefully to see that it agrees with the original and forwarded to the ticket auditor with report of cash fare collections.

Special attention is called to the fact that these rebate tickets are to be issued exclusively for excess fares collected within the State of South Carolina, and are not to be issued for fares collected between interstate points, nor are they to be used for fares collected at agent's rate within the State of South Carolina which do not require a rebate.

*Conductors will continue to use the Blanchard form of cash fare receipt for fares collected at agent's rates between interstate points.*

The excess rate of 25 cents will be refunded to passengers upon surrender of the original rebate ticket to any ticket agent within the State of South Carolina within twenty (20) days after date of issue cancelled in margin.

Ticket agents should stamp all rebate tickets redeemed and forward same to ticket auditor with report, Form 1950, at the end of each month. The total amount of this report should be entered on credit side of Summary Passenger Traffic, Form 1684, opposite heading, 'Excess Cash Fares Refunded.'

| Date | | | | |
|---|---|---|---|---|
| 1905 1903 1901 | 30 28 26 24 22 20 18 16 14 12 10 8 6 4 2 | Dec. Oct. Aug. June Apr. Feb. | | |
| 1904 1902 1900 | 31 29 27 25 23 21 19 17 15 13 11 9 7 5 3 1 | Nov. Sep. July May Mar. Jan. | | |

Form C. R. C.

If Half Punch Here

If 2d Class Punch Here

## Issued by SOUTHERN RAILWAY CO.
### PASSENGER'S REBATE CHECK.

Passengers will notice that the amount punched out in margin below shows the exact amount paid to Conductor. ..........
.... ......................... from ....................................... to ...............................
on train No............... ..on date cancelled in margin above.

This Rebate Check to be used only for fares paid within the State of South Carolina.

The Excess (25 cents) paid Conductor will be refunded by any Ticket Agent of this Company within the State of South Carolina on surrendering this Check within Twenty (20) Days after date of issue.

W. A. TURK,
General Passenger Agent.

Amount Paid: $9.00, $8.00, $7.00, $6.00, $5.00, $4.00, $3.00, $2.00, $1.00, 90 Cents, 80 Cents, 70 Cents, 60 Cents, 50 Cents, 40 Cents, 30 Cents, 20 Cents, 10 Cents, 9 Cents, 8 Cents, 7 Cents, 6 Cents, 5 Cents, 4 Cents, 3 Cents, 2 Cents, 1 Cent.

D. M. CULP, A. H. PLANT, W. A. TURK,
Traffic Man. Auditor. Gen'l Pass. Agent."

By this circular the passenger must claim his or her money within twenty days after the rebate check is issued. This was in palpable violation of the terms of the circular issued by the railroad commissioners, who put no limit upon the collection of the rebate check by the passenger. It was under this circular of the appellant railway that the conductor, Mr. Robertson, was acting. However, in the year 1900, the General Assembly of this State, by an act duly passed, see pp. 457, 458 and 459 of the 23 volume of statutes at large of this State, wiped from its statute books all previous legislation on the subject of fares to be paid by passengers on railroads in this State. It was so held by the majority of this Court in *Kibler* v. *R. R.,* 62 S. C., at pages 271, 272 and 273, 40 S. E., 556, and was reaffirmed in the second trial of the same case, *Kibler* v. *Southern Railway,* 64 S. C., 242. A contrary view was upheld by his Honor, Judge Watts, for the reason he had not seen the case just last cited—it having been filed a few days before the trial at bar. The precise point raised in the case at bar was attempted to be raised in appellant's eighth exception, in *Kib-*

*ler* v. *Southern Railway,* when on trial the second time. See page 246 of 64 S. C. This Court then said : "We think Judge Gary was right in refusing to charge the eighth request" (a railroad company has the right to impose an excess charge of twenty-five cents upon passengers who fail to buy tickets when opportunity is offered, and rebate check is furnished, which was refused by the Circuit Judge) "of defendant. But whether he was right or wrong in such declaration of the law, will not affect this case, for the reason that defendant railroad had no tickets" (three cents for one mile) "for sale at its agency in Newberry for less than ten cents." In the case at bar, the Southern Railway Company was tendered its fare for ten miles by the plaintiff, respondent, and refused that tender. Such railroad had no right to require the extra fare of twenty-five cents in addition to its regular fare of thirty cents from Union to Jonesville, both points being within this State. Since the act of 1900, herein referred to, no affirmative action has been taken by the railroad commissioners or the railway company. We hold that the Circuit Judge erred.

We overrule exceptions 2, 3, 4, 5, 6, 7, 8, because there is nothing in the case to show that such exceptions relate to any material matter. If the Circuit Judge was in error as to the twenty-five cents excess, then it becomes of no avail to the appellant, for the legal fare was tendered by the passenger, and, of course, every act of the conductor was erroneous—he had no right to eject the passenger at Bonham or anywhere else on its line of way, because he refused to pay an illegal exaction.

4th. So far as the ninth exception is concerned, we will say that after the foregoing views expressed by us, there was no error of the Circuit Judge in refusing a new trial, so far as exceptions 1, 2, 4, 7 and 8 are concerned, and we are powerless to order a new trial because the verdict is excessive.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE JONES.    I concur in overruling the appellant's exceptions and in affirming the judgment of the Circuit Court, but I do not assent to the proposition that the regulation of the railroad company requiring an "excess fare" of twenty-five cents over regular rates to be paid by all persons seeking to travel upon said road who, after reasonable opportunity therefor, have failed to purchase a ticket, is unlawful.    Such a requirement is not unreasonable.    It is the duty of one who wishes to become a passenger on a railroad train to comply with all reasonable regulations of the company.    His right to board the train and become a passenger thereon is not absolute under all circumstances.    His primary duty is to purchase a ticket at the designated agencies for the purpose, if reasonable opportunity is offered, and then to enter the train as an accepted passenger, having complied with the rules of the company. If he negligently or wilfully fails in this, then he is liable to be rejected as a passenger for want of a ticket, or as a much milder alternative, to deliver to the conductor the sum of twenty-five cents, called "excess fare," in addition to paying the regular fare, which "excess fare" is to be refunded to the passenger and demanded at any station of the company in the State.    This regulation, as much for the convenience of the passengers, who might otherwise be rejected as passengers for want of a ticket, as it is for the advantage of the company in the conduct of its business, cannot fairly be said to be unreasonable.    The tendency of such regulation is to promote the convenience and safety of passengers generally, by relieving conductors of selling tickets, making change, discussing fares, &c., consuming his time and attention, which should be devoted to the control and management of his train and its connections, and to the general comfort and safety of the passengers.    Such a regulation, in its tendency to cause passengers to buy tickets at the designated agencies, certainly comports with correct business methods in securing proper oversight and custody of the company's revenues. The inconvenience to which it subjects the passenger, who

negligently or wilfully fails to purchase a ticket from the station agent, is very small compared with the inconvenience which it entails upon the railroad company, to sell tickets by conductors in charge of running trains. The regulation, too, is one approved by the railroad commissioners of the State. It is true, the railroad commissioners have no power to approve a regulation in conflict with the law of the State, but the regulation does not conflict with any law of the State. The statute provides that "the rate for transportation of passengers * * * shall not exceed three cents per mile for every mile traveled." The language evidently contemplates a charge for service rendered in transportation to be retained by the railroad company as its own property, but the money paid or delivered by way of "excess fare," so called, is not intended to be the property of the railroad company, but is refundable on demand at any station of the company within the State. If on reaching his destination the passenger should, as he has the right to do, present his return check and receive back his money, how can it be said that his "rate of transportation" had been increased. If he neglects or refuses to demand return of the money, his loss of such money results from his own neglect or conduct and not because it was exacted from him in charge for his transportation. This question was squarely presented in *Reese* v. *Pennsylvania R. Co.,* 6 L. R. A., 529, and decided in accordance with the views above stated.

I cannot subscribe to the view that this question has already been decided adversely in the case of *Kibler* v. *the Southern R. R. Co.,* reported in 62 S. C., 272, 40 S. E., 556, and 64 S. C., 245. In the first appeal, the Court, speaking by Chief Justice Pope, then Associate Justice, said: "So far as the twenty-five cents extra fare is concerned, that question does not enter into this appeal." In the second appeal, exception was taken to refusal to charge defendant's eighth request, as follows: "A railroad company has the right to impose an excess charge of twenty-five cents upon passengers who fail to buy tickets when opportunity is offered and re-

bate check is furnished." Responding to this exception, the
Court, speaking by Mr. Justice Pope, said: "We think Judge
Gary was right in refusing to charge the eighth request of
defendant." This language, isolated from its connection,
would indicate that in the opinion of the Court the refusal to
charge the request was right, because the request contained
an erroneous proposition of law; but when the following
connected language is noticed, it will be seen that the refusal
of the request was right, because, whether it contained a
sound or unsound proposition of law, it was inapplicable to
the case before the Court. The language of the Court was:
"But whether he was right or wrong in such declaration of
the law, it will not affect this case, for the reason that de-
fendant railroad had no tickets for sale at its agency in New-
berry for less than ten cents. Its own agent testified that he
would not have sold the plaintiff a ticket from Newberry to
Helena for three cents, or rather for any amount less than
ten cents. This being so, such ruling *was not necessary in
this cause*—it became an abstract question of law. This
ruling, as before said, *whether right or wrong, did not affect
the case.* So, therefore, subdivisions (1) (2) (3) of the
third exception *do not* fairly arise upon the record, and are,
therefore, overruled" (the italics mine). This shows con-
clusively that the question which has been discussed was
not decided in Kibler's case. The point decided was that the
act of 1900, limiting the rate for transportation of passengers
to three cents per mile, operated as a repeal of the provisions
of sec. 1 of the act of 1884, 23 Stat., 759, because such pro-
visions were inconsistent with the act of 1900, but this left
untouched sec. 2 of the act of 1884, which gave the right
to charge twenty-five cents extra under certain conditions.
There is great force in the view, however, that any extra
*charge* for transportation over three cents per mile is incon-
sistent with the limitation to three cents, and if the "excess
fare," as collected in this case, was a *charge for transporta-
tion* or *rate for transportation,* in the sense of the statute, I
am willing to concede that as a charge or rate for transporta-

tion it would be unlawful under the act of 1900, being in excess of three cents per mile. But I have attempted to show that money received temporarily and to be refunded upon demand is in no proper sense a rate or charge which involves absolute right of property and retention in the receiver. The regulation as to such "excess fare" is, therefore, sustained as a reasonable regulation, not in conflict with any law of the State, and approved by the railroad commissioners of the State. I have said this much because the question was considered in the opinion by Chief Justice Pope, and I wish to make clear my attitude with reference to the subject, and to prevent any further misapprehension of the point decided in Kibler's case, *supra;* but I do not regard that the question is even now properly before us for discussion. The case shows this statement: "Throughout the trial the plaintiff did not contend that the defendant was limited to a charge of three cents per mile, as fixed by statute, but conceded that defendant had the right to impose a reasonable excess charge, where opportunity was offered for purchase of ticket and none was purchased." The charge of Judge Watts was in conformity with this concession of plaintiff's counsel, and the contention of defendant's counsel, and, as I think, in accordance with the law; and no exception had been taken to the charge in this regard by either side. It ought, therefore, to be treated as the law of this case.

The exceptions to the charge raise an interesting question about which there is some conflict among the authorities, and I regret that the time now at my disposal will not permit a full discussion. I will content myself with briefly stating the reasons which induce me to vote for an affirmance of the judgment of the Circuit Court. Under the admissions of counsel, the first cause of action was practically abandoned, except in so far as the manner of performing a lawful ejection from the train was unlawful; for having conceded the defendant's right to collect the "excess fare," and it being undisputed that the plaintiff upon demand therefor was unable to pay, it necessarily followed

that defendant had the right to eject him as a trespasser, provided it was done in a lawful manner. *Moore* v. *R. R. Co.,* 38 S. C., 1, 18 S. E., 120. The main contest, therefore, was upon the second cause of action, which involved the right of one who had been ejected from the railroad train at a station where passengers were received, to re-enter the same train for the purpose of becoming a passenger, with an honest intention to comply with the company's reasonable regulations and with the means of complying. The Judge charged substantially, that under such circumstances it was the duty of the common carrier to receive him, and I do not think there was error in such charge, when applied to the facts in the case. The paintiff was prevented from re-entering the train as passenger under circumstances of unusual harshness of conduct by the conductor. The plaintiff did not refuse to pay the "excess fare," in. the first instance, from any spirit of wilfulness or in denial of the defendant's right to collect such "excess fare," but because he only had thirty-five or forty cents in money, and the regular fare was thirty cents—having failed to purchase a ticket because he only reached the station in time to board the train. When the conductor demanded his fare, plaintiff handed him thirty-five cents, which plaintiff testified the conductor took off with him, but afterwards returned and handed it back to him, demanding the "excess fare" in addition. · The plaintiff was put off at Bonham, a station between Union and Jonesville. Plaintiff lived at Jonesvile, with a wife and a large family of children, five of whom were sick, and had gone to Union and procured some medicine and soup material for them and was returning home. When the "excess fare" was demanded, he tried to borrow it on the train, but failed. After being put off at Bonham, a passenger gave him twenty-five cents, and he then sought to re-enter the train, informing the conductor that he had the money, declaring, "Here is your money, I want to go on this train. My family is sick." To this appeal the conductor gave no heed, but with force prevented the plaintiff from entering the train,

notwithstanding other passengers pleaded with the conductor to desist, offering to pay whatever was demanded. The conductor acted on the theory that having been put to the trouble of stopping his train to eject plaintiff for failure to pay the "excess fare," the plaintiff had lost all right to re-enter that train. Some cases do hold, that "after a person has refused to pay his fare and is being put off the train, he acquires no right to the passage by then tendering the fare demanded." *O'Bien* v. *Railway,* 15 Gray, 20; *Hoffbauer* v. *Railway,* 35 Am. Rports, 278. The general principle upon which this view rests is thus stated in 15 Gray, 20: "After being rightfully expelled from the train, he could not again enter the same car and require the defendant to perform the same contract he had broken." But I think the Texas, California and Tennessee Courts are right in limiting the application of such rule to cases of *wilful* violation of contract on the part of the passenger. *Texas &c. Pac. R. R. Co.* v. *Bond,* 62 Texas, 442, 50 Am. Rep., 532; *Bland* v. *So. Pac. Ry. Co.,* 55 Cal., 590, 36 Am. Rep., 50; *Louisville etc. Ry. Co.* v. *Harris,* 9 Lea, 180, 42 Am. Rep., 668; and *L. N. & Gt. S. R. Co.* v. *Guinan,* 11 Lea, 98, 47 Am. Rep., 279. There being no evidence of any fractious or wilful opposition by plaintiff to the reasonable regulations of the company, the trial Judge fairly stated to the jury the law applicable to the case, and the verdict should not be disturbed.