### 8062

#### PHILLIPS v. ATLANTIC COAST LINE RAILROAD CO.

CARRIER.—IF A PASSENGER be rightfully ejected at a station for non-payment of fare, the carrier may refuse to permit him to re-enter the train upon offer to pay. Section 2134 of the Code of 1902 does not apply to this case.

Before PRINCE, J., Sumter, November, 1910. Reversed.

Action by Lucius B. Phillips against the Atlantic Coast Line Railroad Company and Warren Jones. Defendants appeal.

*Messrs. F. L. Willcox, Mark Reynolds* and *Lucian W. McLemore,* for appellants.    *Mr. McLemore* cites: *Issue of punitive damages should have been withdrawn from the jury:* Suth. on Dam., sec. 393; 69 S. C. 444; 62 S. C. 252; 64 S. C. 423; 47 Am. R. 279.    A *passenger lawfully ejected may be refused entrance again:* 77 Am. Dec. 347; 42 Am. R. 432; 3 Vroom. 309; 54 Am. R. 699; 3 Pork. Cr. Cas. 234; 18 Fed. 155; 15 S. E. 13; 16 Cyc. 553-4; 35 Am. R. 278; 10 S. E. 566; 65 S. C. 356; 50 Am. R. 532; 36 Am. R. 50; 34 Am. R. 284; 42 Am. R. 668; 42 Fed. 787; 152 Fed. 608; 4 Elliott on R. R., sec. 1637; Hutch. on Car., sec. 1085; 88 S. C. 421.

*Messrs. Lee & Moise,* contra, cite: *Was conduct of appellant unlawful, cruel and wanton?* 65 S. C. 356; 38 S. C. 1; 50 Am. R. 352; 42 Am. R. 668; 41 Am. R. 640; 36 Am. R. 50.    *Passenger may re-enter and pay fare:* 90 Ill. 26; 132 Mass. 116; 62 Md. 95; 47 Ia. 82; 53 Mo. 317.    *Conductor acted wilfully:* 88 S. C. 14.

December 19, 1911.    The opinion of the Court was delivered by

MR. CHIEF JUSTICE JONES.    The plaintiff boarded defendant's train at Florence, S. C., as a passenger for Marion, S. C., on February 14, 1910, and was ejected at Mars Bluff, a regular station, for nonpayment of fare.

Before putting plaintiff off the conductor informed him that if he was ejected he would not be allowed to re-enter the train.    As soon as plaintiff stepped on the ground he offered to pay full cash fare from Florence to Marion, but was informed by the conductor that he could not get on the train and when plaintiff got upon the first steps of the platform to re-enter the train he was forcibly prevented.    This action was brought to recover actual and punitive damages for the second ejection or exclusion.

The contention of the plaintiff, sustained by the Circuit Court in the charge, was that a passenger lawfully ejected for wilful refusal to pay fare has the right to re-enter the same train as passenger upon tender of the full cash fare from the beginning of the trip, if the ejection was at a regular station.

The judgment was for plaintiff for $850.

The point has not been ruled in this State, although the writer in his concurring opinion in *Weber* v. *Ry. Co.,* 65 S. C. 378, 43 S. E. 888, expressed the view that one who had been rightfully expelled from a train for nonpayment of fare could not again enter the same train and acquire right to passage by tendering the fare, if his refusal to pay in the first instance was fractious or wilful.

The great weight of authority supports that view: *Hoffbauer* v. *Delhi etc. Ry.,* 35 Am. Rep. 278; *Louisville etc. Ry. Co.* v. *Harris,* 42 Am. Rep. 672; *Texas & Pac. Ry. Co.* v. *Bond,* 50 Am. Rep. 532; *Pickens* v. *Richmond etc. R. R.,* 10 S. E. Rep. 562; *Pease* v. *Delaware etc. R. R. Co.,* 101 N. Y. 367, 54 Am. Rep. 699; *Georgia Southern etc. R. R. Co.* v. *Asmore,* 16 L. R. A. 53, and note; *Missouri etc. R. R. Co.* v. *Smith,* 152 Fed. Rep. 608, 10 A. & E. Ann. Cases 939, and note.

We can not think that this sound and salutary rule has no application to lawful ejection at a station where the train is accustomed to stop, and is limited to ejection between stations. The practical effect of such a limitation would be to abrogate the rule, or to cause ejections to be generally made between stations. This last would entail greater loss and inconvenience both upon the carrier and the ejected passenger, as well as delaying the other passengers. The mere wear and tear of stopping and starting a train would often exceed the fare demanded. The place for landing between stations would generally be more unsafe than at stations, because of the absence of provisions for safe landing usually made at stations. The passenger ejected between stations

might often be left in darkness, without shelter, and without means to reach a station. Frequent stoppings between stations would seriously interfere with the train's schedule. Would it not be safe and wise to permit and encourage the carrier, when exercising its right of ejection, to do so at a station, so as to subject all parties concerned to the least inconvenience and injury, without thereby impairing the right.

The case of *O'Brien* v. *Boston etc. R. R. Co.,* 15 Gray 20, 77 Am. Dec. 347, was a case of lawful ejection between stations, but the primary reasons given for denying the passenger's right to re-enter the car upon tender of the fare after an expulsion for nonpayment were as follows:

"Nor could he regain his right to ask of the defendants to perform their contract by his offer to pay the fare after his ejection. They were not bound to accept a performance after a breach. The right to demand the complete execution of the contract by the defendant was defeated by the refusal of the plaintiff to do that which was either a condition precedent, or a concurrent consideration on his part, and the nonperformance of which absolved the defendants of all obligation to fulfill the contract. After being rightfully expelled from the train, he could not again enter the same cars and require the defendants to perform the same contract which he had previously broken. The right to refuse to transport the plaintiff farther, and to eject him from the train, would be an idle and useless exercise of legal authority, if the party, who had hitherto refused to perform the contract by paying his fare when duly demanded, could immediately re-enter the cars and claim the fulfillment of the original contract by the defendants."

It is conceded by practically all the Courts that make a distinction between expulsion at stations and between stations, that the tender must be for the fare from point where the passenger first boarded the train, not from the station where re-entry is sought, which shows an unwillingness to

recognize that a new relation is created by tender of fare for the same train and trip at the station of expulsion. Such belated tender of fare as a performance of the original contract can not fully restore the status, for the passenger has wilfully subjected the carrier to the trouble and risks involved in a forcible ejection and is usually smarting under humiliation and irritation because of the expulsion, and there is reason for apprehending that he might again refuse to pay and resist ejection when returned to the place and witnesses of his humiliation. Conductors, usually busy with other duties at stations, ought not to be subjected to the duty of accepting fares before the passenger is admitted to the train, and he can have no assurance that trouble would not again occur when the fare was demanded in the ordinary way of the recusant passenger who had just previously fractiously refused to pay.

We do not regard section 2134, Civil Code, as applicable to the discussion as that relates merely to the duty of the carrier to stop at the advertised stations a time sufficient for receiving and letting off passengers, referring to passengers beginning or ending passage at such station. It cannot be construed as requiring the carrier to receive as a passenger one who had been expelled for conduct amounting to a forfeiture of his right to a continuation of his trip on that particular train.

While the common law makes it the duty of the carrier to accept passengers at its stations for that purpose who present themselves in a proper manner and are ready and willing to comply with the reasonable rules of the company, it does not deny to the carrier the right to enforce such a reasonable rule as one which prevents a passenger who has wilfully refused to pay his fare and provoked expulsion, from re-entering the same train.

*Pease* v. *R. R., supra,* was a case of expulsion at a station, where fare was tendered on the platform near the car door

which point the passenger had reached in the process of expulsion.

It was held that the tender could not have the effect of making a further expulsion unlawful and that the fact the expulsion occurred at a station was immaterial. The Court *inter alia* used this language: "In such a case as this we think a passenger who resists the lawful requirement of the company to the extent of provoking a breach of the peace and the exhibition of violence in the presence of other passengers can not as a matter of law demand a passage upon the train where such an exhibition has been made." Referring to the case of *O'Brien* v. *Ry.*, 80 N. Y. 236, the Court stated that it held "that if the stoppage of a train is rendered necessary to expel a passenger therefrom for a fractious refusal to pay fare he does not, by offering to pay it before expulsion, become entitled to continue the trip," and further referring to the O'Brien case the Court said that it decides nothing further than that after arrival at a station and while there and before force has been applied to effect expulsion tender of fare would render expulsion unlawful. It is thus made clear that in these cases the fact that the train was at a station was only material in determining when the process of expulsion began. Since the train must stop at a regular station in any event, it can not be said that the stopping was the beginning of process to expel the passenger, whereas between stations the stopping of the train, if for the purpose of expulsion, is a process in the expulsion. We can conceive that an expelled passenger at a station may enter into a new relation by purchasing a ticket entitling him to board the train at that point, on the theory that the carrier has made a new contract. Even in that event the authorities, with an exception or two, appear to hold that the passenger must pay the fare from the initial point of the trip. *Swan* v. *Manchester etc. R. R.*, 42 Am. Rep. 432.

It may be also that if the expelled passenger, with the knowledge and acquiescence of the conductor, had re-entered

the car with intention to comply with the reasonable rules of the company, there would be evidence of a restoration of the original relation, which would prevent another expulsion, if timely tender of fare was made.

The case before us presents no such circumstances. The plaintiff, although warned before hand that he would not be allowed to return to the train if ejected, immediately after ejection endeavored to re-enter the train, notwithstanding the ejection and interposition of the train officials.

There should be a new trial.

The judgment of this Court is that the judgment of the Circuit Court be reversed and the case remanded for a new trial.